STATE OF NEBRASKA, APPELLEE, v. DONALD P. EASTER, APPELLANT.

118 N. W. 2d 515

Filed December 7, 1962. No. 35184.

Byron M. Johnson, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a criminal action prosecuted in the name of the State of Nebraska, plaintiff, appellee herein, against Donald P. Easter, defendant, appellant herein. Defend-

ant was charged by information filed by the county attorney in the district court for Scotts Bluff County.

Upon trial, defendant was found guilty by the jury and was sentenced to the Nebraska State Reformatory for a period of from 3 to 5 years. Defendant appeals to this court.

There are 40 separate assignments of error. We do not deem it necessary herein to list these specific assignments. We will allude to many of them specifically but, where appropriate, reference will be to the general subject matter involved.

The portion of the information essential to a review of the questions raised in this appeal is as follows: "* * * defendant on the 12th day of June, 1961, in the County of Scotts Bluff and State of Nebraska, then and there being, did then and there, wilfully, unlawfully and feloniously and fraudulently obtain from Katie Betz $150.00 with intent to cheat and defraud her by making the following false and fraudulent representations: (1) That defendant was bonded in the sum of $10,000.00, when in fact he had no such bond; (2) That Katie Betz would be employed by A.I.L., Inc., when in fact neither he the said defendant nor A.I.L., Inc., ever intended to employ Katie Betz: (3) That the $150.00 was for a 'Bond of Intent' to A.I.L., Inc., when in fact the $150.00 was paid to defendant in his name and treated by defendant as income either of himself or A.I.L., Inc., and not as a bond: and Katie Betz, relying upon such false and fraudulent representations made by defendant, gave a check for $150.00 payable to defendant Donald L. (sic) Easter which he presented for payment at the bank on which it was drawn and received payment, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the people of the State of Nebraska."

There is evidence from which the jury could have determined the facts to be as set out hereinafter. On June 12, 1961, defendant, being in Scottsbluff, Nebraska,

telephoned Mrs. Katie Betz, an elderly retired farm lady living alone in that city, and asked her if she " 'would like to make a little extra money.' " When he received an affirmative reply, he asked permission to come up to her home to explain his proposition to her. He was at her home approximately 10 minutes after she said " 'All right.' " His proposition was that for answering telephone calls connected with the business of A.I.L.,Inc., for 2 or 3 hours a day, she could earn about $900 a year. A.I.L., Inc., is an Oregon corporation, which purports to be able to secure discounts for its members on various articles and services by eliminating some of the costs of the "middleman" in the selling process. The letters themselves purport to represent "Anti-Inflation League."

The defendant had been soliciting representatives in other states for several months. These representatives were in each instance elderly ladies who had been contacted by a phone call. Nothing appears in the record as to how their names were obtained. These representatives were told that their duties would be to process inquiries from members of A.I.L., Inc., who called to determine what they could buy at a discount and from whom. These representatives were to be paid by receiving a percentage of the membership fees collected from members in the area. They were also told that it was necessary that they give a bond called a "Bond of Intent" in the amount of $150, to guarantee their good faith, and that they would hear from the defendant in 30 or 40 days. At that time they would receive instructions on their duties as well as a written agreement as to their percentage of the membership fees.

The defendant testified that he and his wife were the only officers of A.I.L., Inc., and that he regarded himself as one and the same as A.I.L., Inc. The money obtained from the ladies for their "Bonds of Intent" was used by him for his personal expenses or was sent to his wife to be deposited in their personal savings account. Several prospective representatives from Nebraska and

some from other jurisdictions testified. Although the "Bond of Intent" money had been paid, none of them had ever received instructions from the defendant or the corporation as to their specific duties, nor were they given information as to where any prospective callers might secure articles or services at a discount. In fact, the defendant testified that the only agreement he or the corporation had with anyone who would supply articles or services at a discount was the dealer who sold him his car and two or three others in Oregon whose names and addresses were too fragmentary to be very informative. There had been no agreements made in Nebraska, although several aged ladies had given "Bond of Intent" deposits to serve as representatives. Further, there is no evidence in this record which would indicate that any memberships had been sold. The most we find is a suggestion in the record that the defendant, some time in the future, expected to hire agents to sell memberships.

The foregoing is the barest outline of the method of operation used by the defendant. There is no dispute in this case but that the defendant did ask for and receive a check for $150 from Katie Betz which was for a purported "Bond of Intent"; that this check was made payable to him personally; and that it was immediately cashed by him. Katie Betz testified this check was given in reliance on defendant's representations.

Defendant questions the sufficiency of the evidence to sustain a conviction. As we view the record, there is evidence on all the material elements which we do not deem necessary to detail herein. In the early case of Dutcher v. State, 16 Neb. 30, 19 N. W. 612, we said: "Where there is distinct evidence of each material fact necessary to establish the guilt of the accused legally before the jury, a verdict against him will be upheld, although such testimony may be contradicted by other witnesses."

There is no question that a jury could properly find

the defendant guilty of obtaining money under false pretenses. It would severely strain credulity to describe defendant's method of operation in any other manner. The questions to be determined herein are whether the defendant's constitutional rights were protected, and whether he was accorded a fair trial.

The record clearly indicates that the defendant was apprehended at Sidney, Nebraska, about 5 p. m., June 15, 1961, at the request of the Scotts Bluff County sheriff, who held a warrant for his arrest. He was placed in the Cheyenne County jail until approximately 9:15 p. m., when he was delivered to a deputy sheriff from Scotts Bluff County. Before leaving Sidney, defendant requested and was granted permission to get a suitcase which was locked in the trunk of his car. The defendant testified that his brief case, which at that time was under the deputy's arm, had been on the front seat of his car the last time he saw it. When the defendant arrived at the county jail in Gering, he started to take the suitcase and the brief case upstairs with him, but they were taken from him to be placed in the property room which was near the sheriff's office.

The next morning, out of the presence of the defendant and without the defendant's knowledge, the deputy sheriff inspected the contents of the brief case and the suitcase. That afternoon, the defendant was brought into the county courtroom, and in the presence of the deputy and the court reporter, was examined by the county attorney. On that occasion, the brief case and the suitcase were on a table in front of the defendant. The county attorney testified that when he asked the defendant if he had any objection to his looking in the suitcase and the brief case, the defendant said: " 'No. I operate a legitimate business. I have nothing to hide.' " The deputy sheriff testified: "A We had the brief cases laying on the table there, and when Mr. Easter sat down, why, you'd asked him if he had any objections to going through them and using what was said in there. Q

And what did Mr. Easter say? A He said he had no objections to it at all." This statement was denied by the defendant. Subsequently, and out of the presence of the defendant, the county attorney did examine the papers in the brief case and the suitcase to obtain the names of witnesses. These he contacted and some of them appeared as witnesses at the trial.

Defendant's first assignment of error concerns the overruling of his motion to require the State to specify the statute and the subdivision of the statute upon which the State was relying in making the charge. The basis of the defendant's motion is his constitutional right to be informed of the nature and the cause of his accusation. "In all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of accusation * * *." Art. I, § 11, Constitution of Nebraska. The motion was a proper one. The section of statute on which he was charged on motion should have been made a matter of record. The ruling herein, however, was error without prejudice. The defendant understood he was charged under section 28-1207, R. R. S. 1943. Before the preliminary hearing in county court, the defendant filed a motion to abate and strike each specification of the complaint because it did not charge a crime under section 28-1207, R. R. S. 1943. Further, his brief concedes that he was able to ascertain that he was charged under section 28-1207, R. R. S. 1943, and that the county attorney advised him that the charge was brought under that section. It is evident also that the complaint as drawn only charged an offense under the first subdivision of section 28-1207, R. R. S. 1943.

Defendant's assignments of error Nos. 2, 3, 4, 5, and 6 cover the overruling of his motion to quash, plea in abatement, demurrer, and motion to strike and require the State to elect. These were all filed on the 29th day of August 1961. The defendant was arraigned on the same day, and upon the advice of counsel stood mute. The court entered a plea of not guilty. From the state

of the record itself, it is not possible to tell whether the motions and pleas were filed prior to the time the defendant was arraigned. However, the defendant has brought up by supplemental transcript the affidavit of the district judge that the motions, plea, and demurrer were ruled on before the court entered a plea for the defendant. For the purpose of this opinion we will consider the record as so modified.

Defendant argues that the information did not sufficiently inform him under what subdivision of the statute he was charged. Concededly, the information is poorly drawn. However, it is apparent that what the defendant refers to as counts and subdivisions are no more than purported false and fraudulent representations made, allegedly to cheat and defraud Katie Betz of $150. The wording of the information is such that defendant could only be charged with obtaining money on representations he knew to be false with the intent to defraud and cheat Katie Betz. As suggested, it is evident that the complaint as drawn only charged an offense under the first subdivision of section 28-1207, R. R. S. 1943. The defendant was fully and sufficiently informed by the information of the charge against him. The motion to quash was properly overruled.

Defendant's plea in abatement set forth many allegations, but the evidence thereon was directed to the manner in which the State obtained its evidence, which will be discussed hereafter. There is no merit to defendant's contention that he was illegally taken into custody. After a warrant had been issued in Scotts Bluff County, the sheriff at Sidney was requested to apprehend the defendant for the Scotts Bluff County sheriff. He was taken into custody and delivered to a deputy sheriff of Scotts Bluff County who came to Sidney with the warrant. There was probable cause for the defendant's arrest, and his arrest was legal.

Defendant's general demurrer was without merit, and was properly overruled. The motion to strike and to

require the State to elect upon which of the separately numbered false pretenses the State would rely was also properly overruled. As suggested heretofore, the numbered portions of the information were the representations upon which the State was relying to prove the obtaining of the $150 by false pretenses. They constituted but one offense and were specifically set out to advise the defendant of the specific representation upon which the State based its case.

The defendant's assignments of error Nos. 8, 9, 10, 11, 12, 13, and 14 are directed to the court's refusal to give instructions tendered by the defendant. In each instance, the instructions tendered either did not reflect the charge specified in the information or were sufficiently covered by instructions given by the court. There was no error in the refusal of tendered instructions.

Defendant's assignments of error Nos. 15 to 25 cover instructions given by the court. The principal instruction complained of in the brief is instruction No. 13, which defined false pretenses. While the instruction is not very artfully drawn, it is not prejudicially erroneous but in fact is probably more favorable to the defendant than it would have been if it had been more carefully drawn. Defendant may not predicate error on an instruction that is more favorable to him than is required by the law applicable to the charge made. Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632.

The defendant urges that the court in effect withdrew essential elements of the case from the jury by failing to specifically instruct on certain particulars of the law and the evidence. We do not so construe the instructions. When the instructions are read in their entirety, there is no merit to this contention. They correctly state the law applicable to the crime charged, and in no sense are prejudicially erroneous. If anything, the instructions narrow the scope of the charge and were more favorable to the defendant than they might have been. Grandsinger v. State, *supra*.

Defendant's assignment of error No. 30 complains that the court failed to instruct the jury that testimony which had been stricken or which the jury had been admonished to disregard was not evidence in the case and must not be considered by the jury in its deliberations. Where testimony had been stricken, it was not before the jury, and while it would not be improper to admonish the jury in the instructions to disregard any testimony ordered stricken during the course of the trial, it is not a necessary instruction.

Defendant's assignment of error No. 32 involves the admission, over objection, of testimony of similar transactions with other persons at different times and places. As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. Erving v. State, *ante* p. 90, 116 N. W. 2d 7. There is, however, a recognized exception to this rule. As we said in Sall v. State, 157 Neb. 688, 61 N. W. 2d 256: " 'Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged. Whether such other alleged crimes are too remote rests largely in the discretion of the trial court.' " The evidence about which the defendant complains was properly admitted under this rule. The trial court amply protected the rights of the defendant in his instructions to the jury by carefully defining the limitations placed upon the admission of the testimony of similar acts and transactions.

The principal questions raised by the defendant revolve around the contention that his records and papers were illegally seized in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. There is no question but that the federal exclusionary rule is now the law of the land. It may no longer be considered as a mere rule of evidence but is a part and parcel of the Constitution. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081,

states: "All evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court."

Has there been an illegal search and seizure herein? The Fourth Amendment does not forbid all searches without a warrant incident to a valid arrest. The constitutional issues should be whether the searches and seizures are reasonable. This is certainly true when we understand that there is no uniform body of law which defines what constitutes lawful arrest or reasonable search incident to lawful arrest. It is always a problem of degree, of what is reasonable or unreasonable under the circumstances.

There is no evidence in this record that the defendant's car was searched incident to an arrest other than the implication to be drawn from defendant's testimony. He testified he left his brief case on the front seat of his car, that he locked the car and gave the key to the police officers at Sidney, and that when he next saw his brief case, the deputy sheriff of Scotts Bluff County had it under his arm. This testimony is disputed by the deputy sheriff, who testified defendant took it from the car. Defendant does admit that he himself unlocked the trunk of his car and took out his suitcase. In any event, we would hold that taking possession of a brief case lying on the seat of an automobile being driven by the defendant would be reasonably incident to an arrest.

The defendant strenuously argues that it was the subsequent use of the papers in the suitcase and the brief case to secure the names of the women previously contacted by defendant which violated his constitutional rights. The defendant's volunteered statement during the trial to the county attorney, during an exchange between counsel, reflects his position: "In other words, if you hadn't had access to something you shouldn't have had access to in the first place you wouldn't have had any case."

As we view the record, there was sufficient evidence (set out heretofore) by which the court could find that the defendant consented to an inspection of the papers in the two cases. The rights granted by the Fourth and Fifth Amendments to the Constitution of the United States may be waived. United States v. Jones, 204 F. 2d 745. Defendant argues, however, that the issue of unlawful arrest and unconstitutional search and seizure was an issue that should have been submitted to the jury by proper instruction, but he fails to furnish authority other than his own statement for this position. Undoubtedly, defendant is confusing this situation with the special procedure required in this jurisdiction regarding confessions. There is no parallel between the two situations. The rule in the instance of confessions is justified by the fact that the jury must necessarily be informed of the circumstances surrounding the confession to be able to properly evaluate it. The probative value of evidence obtained by search and seizure, however, does not depend on whether the search or seizure was legal, and no purpose would be served by having a jury make a second determination of that issue.

As was well said in People v. Gorg, 45 Cal. 2d 776, 291 P. 2d 469: "Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial on the issue of guilt * * * evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure."

We hold that the issues of unlawful arrest and unconstitutional search and seizure are questions for the trial court and are not subject to reconsideration by a jury. When the issue is raised both sides present their evidence, and, as with the usual challenge to the admissibility of evidence, the decision is made by the trial judge. The decision is then subject to review on ap-

peal, but will stand if sustained by the evidence.

There is a more cogent reason herein, however, as to why there is no merit to the defendant's position. Defendant has chosen to operate as a corporation. Although he could see nothing wrong in depositing alleged corporate funds in his own name or using the funds for his own purposes because he considered himself one and the same as the corporation, the fact remains that he dealt with the complaining witness as the president of a corporation. It is obvious that all of the papers from which the information for the trial was derived were the property of the corporation. We feel this is a situation embraced by the rule announced by the Circuit Court of Appeals for the Second Circuit in Lagow v. United States, 159 F. 2d 245: "Where one availed himself of the privilege of doing business as a corporation, even though its sole shareholder, documents which he could have protected from seizure, if they had been his own, could be used against him, even though they were illegally obtained from the corporation, * * *." We approve of this rule and hold that immunity against the use of illegally obtained evidence cannot be claimed by a defendant if he does not own or have a proprietary interest in the property which has been seized. See 2 Wharton's Criminal Evidence (12th ed.), § 700, p. 706.

Defendant complains of the severity of the sentence. Where punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion. Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380. In view of the fact that the record indicates that the defendant specialized in victimizing aged women, who in most instances could not afford the loss, the sentence was more lenient than the record might justify. There was no abuse of discretion.

For the reasons set out above, we find no error in the

record prejudicial to the rights of the defendant, and the judgment herein is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.