STATE OF NEBRASKA, APPELLEE, v. DENNIS O'KELLY, APPELLANT.

124 N. W. 2d 211

Filed November 1, 1963. No. 35443.

Philip C. Sorensen and John C. Gourlay, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

The defendant, by information, was prosecuted in Lancaster County for second degree murder. From the conviction and sentence of life imprisonment for the crime of second degree murder, the defendant appeals.

The questions involved in this case turn upon the determination of the admissibility in evidence of written and oral confessions and admissions of the defendant to the police. Summarizing the specific contentions made by the defendant from the assignments of error argued, they are:

1. The admissions and confessions of the defendant, both written and oral, are inadmissible because they were the fruits of an illegal arrest made without a warrant and without probable cause in violation of the Fourth Amendment to the Constitution of the United States.

2. A warrant for the arrest of the defendant was required even though probable cause for his arrest existed.

3. The admissions and confessions were the fruits of an illegal detention of the defendant, without counsel, because of failure to take the accused before a magistrate within the proper permissible time.

We review the evidence as it relates to these questions. Shortly after 1:30 p.m. on August 4, 1962, the body of Barbara Eastman, a young Indian girl, was discovered in the water at Oak Lake in Lancaster County, Nebraska. The police were notified and the body was taken immediately to the morgue room in the Lincoln General Hospital. An autopsy was performed which revealed that the immediate cause of death was drowning, but that severe blows which had been administered to the head, resulting in major fractures to the skull and jaw and damage to the brain, would probably have resulted in death without drowning. The evidence fixed the time of death at least 6 hours before 3:45 p.m. on August 4, 1962, when the doctor first saw the body, and at least 4 hours after the deceased, Barbara Eastman, had last eaten.

About an hour and a half after the discovery, around 3 o'clock in the afternoon of August 4, 1962, the body was definitely identified as that of Barbara Eastman by her sister, Charlene Williams, and her brother, Alvin Eastman. This identification was made at the morgue of the Lincoln General Hospital and present there at that time was a Lincoln police officer, Robert Sawdon. Immediately after this identification, Sawdon had a conversation with both the sister and the brother. The exact information conveyed by Charlene Williams and Alvin Eastman to the police officer at that time is set out as follows: "* * * and at that time I asked both Mrs. Williams and Alvin Eastman if they had any idea of who Barbara had been with the night before. Both Alvin Eastman and Mrs. Williams stated that there was only one person she could be with and that was Dennis O'Kelly. We pursued the questioning as to what they based their statements on and both Mrs. Williams singly and Alvin Eastman individually stated that Dennis O'Kelly was the only boy or the only man that she went with or had any dates with and both stated that Dennis O'Kelly had brought her to her home, which

was their home, 110 North 28th, the night previously, and that he made arrangements to pick her up later."

Both of these witnesses told Sawdon, the police officer, that the defendant had brought Barbara Eastman home the night previously and that she (Barbara Eastman) had told them that she had a date with the defendant later that night.

Barbara Eastman, the deceased; Charlene Williams, her sister; and Alvin Eastman, her brother, had been living together at their home at 110 North Twenty-eighth Street. The deceased had been dating one man and one man only, the defendant, Dennis O'Kelly. The testimony discloses that on the evening before the discovery of the body, August 3, 1962, the defendant brought Barbara Eastman home in his car. This was witnessed by both Charlene and Alvin. The deceased and the defendant were engaged in a conversation at the time he let her out of the car in front of their home. She got out of the car when it was still moving. She told them that she had a date to meet the defendant later on that evening and during the course of the evening kept watching out of the window for the approach of the car. She left about 10:30 p.m., and the next time that Charlene Williams saw her was at the morgue the next afternoon. The brother and sister testified in substance that the deceased had been going steady with O'Kelly since February, that he and he alone was the only man that she went with, that O'Kelly was a married man, that the deceased and O'Kelly were in love with each other, and that they had made plans to get married and live in Lincoln. Referring to the information furnished Sawdon at the hospital immediately after the identification, Charlene Williams, the sister, testified as follows: "Q- And did you tell them with whom your sister had gone out on the night of August 3, 1962? * * * A- I told them she had gone out with Dennis O'Kelly."

Both Charlene Williams and Alvin Eastman knew

where the defendant lived. Immediately after talking with them at the hospital, Sawdon, Alvin Eastman, and two other officers proceeded to the defendant's residence. The defendant arrived in a car, he was asked to step out of his car, he was then searched, and he was told that he was under arrest and would have to accompany Sawdon to the police headquarters. This arrest took place between 5:20 and 5:30 p.m. on Saturday, August 4, 1962. There was no conversation concerning the purpose for the arrest at the time it took place. After the arrest took place, and in the cruiser car on the way to headquarters, the defendant asked why he was being taken in and was informed he was being taken in for investigation regarding the death of Barbara Eastman. It is undisputed that no warrant had been issued for his arrest. Thereafter, on Saturday afternoon and evening, August 4, 1962, and on the Sunday following, numerous conversations and interrogations were had with the defendant, Dennis O'Kelly. For the purposes of this opinion, we will only briefly review the extent and nature of the defendant's confessions and admissions, both oral and written. The substance of them was that the defendant had been on a date with another girl on the evening of August 3, 1962, and on impulse, drove over to Barbara Eastman's house and picked her up, drove out to Oak Lake, and parked. He told Barbara Eastman he was going to break up with her, she started crying, the defendant pushed her, and Barbara Eastman kept crying and saying, "No." She tried to come back over and put her arms around him, and then he hit her. She became hysterical, got out of the car, and ran away crying, "No, no." He, the defendant, chased her, caught her, and stated that he slapped her to try to bring her back to her senses, and as she tried to break away from him and run, he hit her again. She started to fall down and the defendant hit her with his fist and with some other object but couldn't recall what the object was. The deceased fell to the ground,

and after hitting her further, the defendant shook her, picked her up, and carried her over to the lake. At that time, she didn't move, and the defendant took her and held her in his arms. Then he dragged her over closer to the lake, rolled her into the water, and left, going home.

Other than the contention that these confessions and admissions were the fruits of an illegal arrest and detention, the defendant does not contend that the said confessions and admissions were not properly admitted in evidence or that the jury was not properly instructed as to the different elements necessary for their consideration in this respect. We turn now to the basic question raised in this case. It may be stated simply: Were the oral confessions and admissions of the defendant the fruits of an illegal arrest of the defendant? The defendant urges recent United States Supreme Court decisions applicable to this situation. We recognize and follow the holding of the United States Supreme Court that the protections of the Fourth Amendment to the Constitution of the United States against unreasonable seizures are now made binding upon the states through the due process clause of the Fourteenth Amendment. Wolf v. Colorado, 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782. Evidence obtained as the fruit of an illegal search or seizure, in violation of the Fourth Amendment to the Constitution of the United States and the same provision in Article I, section 7, of the Constitution of Nebraska, is inadmissible in a state prosecution and must be excluded. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A. L. R. 2d 933; followed by our court in State v. Easter, 174 Neb. 412, 118 N. W. 2d 515, and State v. Goff, 174 Neb. 548, 118 N. W. 2d 625. This rule is called the "exclusionary rule." Following the recent holding by the United States Supreme Court in Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441, and also in United States v. Meachum, 197 F. Supp. 803 (1961), both to the effect

that the exclusionary rule embraces intangible evidence, including written and oral confessions and admissions, the defendant argues the inadmissibility of this evidence because it was the fruit of an arrest made without warrant and without probable cause.

It has long been established in Nebraska that a police officer may arrest without a warrant when it appears that a felony has been committed and that there are reasonable grounds to believe that the person arrested is guilty of the offense. § 29-402, R. R. S. 1943; Halsey v. Phillips, 104 Neb. 648, 178 N. W. 218; Nelson v. State, 33 Neb. 528, 50 N. W. 679. We first examine this standard which constitutes the basic law of the state to determine whether it meets the criteria required under the decisions of the United States Supreme Court. The Supreme Court of the United States in a long line of decisions, the latest being Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, has held that the lawfulness of arrest is to be determined by reference to state law insofar as it is not violative of the Constitution of the United States. In the Ker case, *supra,* it was said as follows: "This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrest for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, supra; United States v. Di Re, 332 U. S. 581 (1948); Johnson v. United States, 333 U. S. 10, 15, n. 5 (1948). A fortiori, the lawfulness of these arrests by state officers for state offenses is to be determined by California law." Turning now to the standard set out in our statute and case law that there must be "* * * reasonable ground to believe the person arrested is guilty of such offense," it is clear that this is also the same standard of the Fourth Amendment to the United States Constitution protecting persons against unreasonable seizures. Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d

134. That the standards are the same is conceded by the defendant.

The applicable rule in applying these standards to a particular case is stated in the latest pronouncement of the Supreme Court of the United States in Ker v. California, *supra*, wherein it is stated: "* * * 'there is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' Ibid.; see United States v. Rabinowitz, 339 U. S. 56, 63 (1950); Rios v. United States, 364 U. S. 253, 255 (1960). * * * This Court's long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application is carried forward when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment. And, although the standard of reasonableness is the same under the Fourth and Fourteenth Amendments, the demands of our federal system compel us to distinguish between evidence held inadmissible because of our supervisory powers over federal courts and that held inadmissible because prohibited by the United States Constitution. *We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment.* Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. * * * The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists 'where "the facts and circumstances within their (the officer's) knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense had been or is being committed.' Brinegar v. United States, 338 U. S. 160, 175-176 (1949), quoting from Carroll v. United

States, 267 U. S. 132, 162 (1925); accord, People v. Fischer, 49 Cal. 2d 442, 317 P. 2d 967 (1957); Bompensiero v. Superior Court, 44 Cal. 2d 178, 281 P. 2d 250 (1955)." (Emphasis supplied.)

We, therefore, review the trial court's "substantive determination," "from the facts and circumstances of the case," as to the "reasonableness" of the arrest.

This was a brutal and violent murder of a young Indian woman suggesting the necessity and urgency of immediate pursuit, and the imperative necessity of identification information. The commission of a brutal and violent murder had definitely been established. The very nature of the crime of murder is such that it does not lend itself to the production of eyewitness testimony, and common sense tells us that essential testimony in such a case many times must come from the lips of the accused. Crucial to the investigation and the apprehension of the murderer, as well as the protection of society from further violence, is the urgency of law enforcement officers being able to secure information concerning people who were with the deceased in the time period in which the offense was committed, and thereupon acting on it. The brother and sister witnesses who conveyed the identification information to officer Sawdon were not mere informers acting upon a naked suspicion. They lived with the deceased. They knew the defendant. They knew in fact that this Indian girl had been dating one man and one man only, the defendant, and they conveyed the information to Sawdon that they knew that Barbara Eastman was with the defendant, and no one else, on the night of August 3 or the morning of August 4, 1962, during the exact period within which the officer knew this brutal crime had been committed. We feel that the police acted reasonably and with probable cause to immediately arrest the accused under the circumstances of this case. The record also shows that the police officer did inquire, and we think reasonably so, as to the basis for the information that the two witnesses

furnished him. He discovered at that time (at the hospital), before the arrest, that they had been living with the deceased, that the only man she had associated with was the defendant, that he had brought her home the evening before, and that they knew that the defendant had made arrangements to pick her up later. They both knew the location of the defendant's home. At that time and under those circumstances, the police officer responded to this information by taking the brother, Alvin Eastman, with him and arresting the defendant near his home. The defendant argues that some of the information furnished by the brother and sister was based on hearsay. As far as we can gather from the record, the information furnished to Sawdon at the hospital was based upon direct information and upon personal knowledge known by the brother and sister themselves. Even if it were based on hearsay, the valuation from the standpoint of probable cause is not destroyed thereby. In Ker v. California, *supra*, it is said: "That this information was hearsay does not destroy its role in establishing probable cause."

Further, it seems that it was a reasonable conclusion for the police officer to draw from what was told him that there was at least a reasonable probability that no one else was known who might have been with the victim at the time of her murder. At that time, and at no later time, was there other information or circumstances which would suggest that any other person had the motivation or opportunity to commit this violent crime. The necessity for the police officer to act immediately was clear. Any other reasoning under the circumstances of this case would reach the result that it would be difficult to see where an arrest could be made without warrant for murder, except upon the basis of an eyewitness report or some other equally convincing evidence of such a probative quality that it would fit the final test on trial of proof of guilt beyond a reasonable doubt. Such a requirement or such an interpretation of the facts to

establish reasonable grounds for arrest would place an element in the interpretation of the protections of the Fourth Amendment to the Constitution of the United States that would render the criminal law unenforceable and self defeating. In making a "substantive determination" of reasonable grounds for arrest in a case like this, we recognize the compelling urgency of the circumstances. Ordinarily, on the spur of the moment, the officer under circumstances such as these must decide these questions in the first instance and must decide them quickly, else law enforcement and the apprehension of serious criminal offenders be for naught. The defendant argues that the fact that the police officer advised the defendant, after the arrest and while taking him to the police station, that he was "being taken in for investigation regarding the circumstances around the death of Barbara Eastman," is an admission on the part of the police officer himself that he did not have reasonable and probable cause and that he was merely acting on suspicion. We point out that this statement was made not at the time of the arrest or preceding it, but sometime after the arrest had taken place. The motivations for the subjective feelings of the police officer are not the criteria. The real question is whether or not the information and the situation existing at the time of the arrest constituted reasonable grounds and probable cause for the belief that a crime was committed and that the defendant was guilty. The defendant cites and argues the applicability of the decisions in Day v. United States, 37 F. 2d 80 (Eighth Circuit 1929); Halsey v. Phillips, *supra;* Cochran v. United States, 291 F. 2d 633 (Eighth Circuit 1961); United States v. Clark, 29 F. Supp. 138; and Hanna v. United States, 260 F. 2d 723. It appears that these cases are distinguishable either because the arresting officer acted without having even reasonable ground to believe that a crime had been committed by anyone or that the arresting officer was acting upon a third party informant's suspicion of guilt of

the person arrested as distinguished from factual information furnished by such an informant. Further we are warned by the criteria set out by the United States Supreme Court itself as late as in the Ker case, *supra,* that a rigid formula ("Procrustean") developed from analogy is not the true test. The determination of the question of "reasonable" and "probable" cause must rest upon an examination of the particular facts and circumstances of the case and the evidence in that case as it relates to the particular crime charged and the circumstances surrounding it.

The defendant now argues that even though probable cause existed for the arrest, that there was time available and a warrant should have been obtained, citing Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436, and Wong Sun v. United States, *supra.* The same contention was made in Ker v. California, *supra,* and the court held: "Petitioners contend that the search was unreasonable in that the officers could practicably have obtained a search warrant. The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest, United States v. Rabinowitz, supra; but we need not rest the validity of the search here on Rabinowitz, *since we agree with the California court that time clearly was of the essence. The officers' observations and their corroboration, which furnished probable cause for George Ker's arrest, occurred at about 9 p.m., approximately one hour before the time of arrest.* The officers had reason to act quickly because of Ker's furtive conduct and the likelihood that the marijuana would be distributed or hidden before a warrant could be obtained at that time of night." (Emphasis supplied.) . A brutal and violent murder, the necessity to protect society, and the commission of possible violence during escape surely do not lessen the applicability of the above reasoning in this case.

The defendant, in order to overcome the force of the

argument arising from the emergency of the situation present, argues that the defendant could easily have been spotted and kept under surveillance while the police officer went to a magistrate and secured a warrant. This ignores the very real probability of an escape of a defendant under these circumstances. It is self evident that time was of the essence. The arrest took place within 2 hours after the identification of the body in this case. Just how the police officers would have accomplished a nebulous plan to actually keep the defendant under surveillance and control, so that he could be arrested, while the process of getting a warrant was accomplished and without sacrificing the real possibility of his escape, is not pointed out. As a practical matter, how could the defendant be positively identified and kept under surveillance without tipping him off. When there is reasonable cause to suspect that a given defendant has committed a murder, it surely must be true that such suspect has no constitutional right to have further time to escape the consequences of his acts. We know of no basic constitutional guarantees that could be violated because an officer succeeds in getting to a place where he can arrest a person whom he has probable cause to suspect of murder, more quickly than he would have had he complied with the requirements of getting a search warrant. Certainly, when the circumstances are of such an emergency nature and time demands it, there could be no requirement under the command of the Fourth Amendment that law enforcement increase the possibility of an officer's peril in the apprehension of an accused or increase the real risk of the arrest being frustrated. There is no merit in this contention.

The defendant further argues that irrespective of the legality of his initial arrest, that his subsequent detention was illegal because of the period of time elapsing between the arrest and the time he was brought before the magistrate. The defendant was arrested after 5 p.m. on Saturday, August 4, 1962, and he was taken

before the county judge in the morning of the following Monday, August 6, 1962. A complaint was filed on August 6, 1962. The defendant's constitutional rights were explained to him by the county judge, and the defendant waived his right to a preliminary hearing at that time. A period of approximately 40 hours from Saturday night to Monday morning elapsed between the time of the arrest and the time of the hearing before the magistrate.

The defendant argues to the effect that no warrant was ever issued and that the detention was illegal. However, when the defendant is in fact present before the magistrate at the time the complaint is filed, the court may proceed with the examination of the defendant on preliminary hearing to determine probable cause without the issuance of a warrant. Cohoe v. State, 79 Neb. 811, 113 N. W. 532. When the defendant is in fact present, the issuance of a warrant for his arrest would be a superfluous and useless act.

We hold that the period of time elapsing between the time of the arrest and the preliminary hearing before the magistrate, approximately 40 hours, was reasonable under the circumstances in this case. Section 29-504, R. R. S. 1943, requires that a person charged with a felony shall be brought before a magistrate and that the magistrate "shall proceed as soon as may be," to inquire into the complaint. This and other statutory provisions have been interpreted by our decisions to mean that the accused must be brought before the magistrate in the first instance only as soon as is practical under the existing circumstances. Maher v. State, 144 Neb. 463, 13 N. W. 2d 641; Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1. In the Maher case, *supra*, the elapsed time between the arrest and the hearing before the magistrate on preliminary hearing was approximately 8 days, and in the Gallegos case, *supra*, the defendant raised the precise question of the legality of his confessions taken during a period of 25 days detention before being brought

before the magistrate. The United States Supreme Court affirmed the holding by our court in the Gallegos case that under the circumstances this period of detention was not violative of section 29-504, R. R. S. 1943, nor of constitutional guarantees of due process. Gallegos v. Nebraska, 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86. It also appears, although not decisive of the question, that the brief period of detention of the defendant in this case was during a period of time when the offices of the magistrate were not open or available. We have said that the theory of the law is that the defendant must be given a hearing as soon as possible, as soon as the nature and circumstances of the case will permit. Maher v. State, *supra*. There can be no precise length of time after a legal arrest of a person charged with a crime in which he must be given a hearing. The defendant's constitutional right to not be imprisoned without probable cause is fundamental, but there must be a recognition of the principle that the practical necessities of criminal prosecution require that a state be given a reasonable opportunity to arrange for the presence of witnesses and to marshal testimony pertinent to the issue of probable cause. Nor do we find, as the defendant contends in effect, that the interrogation and the taking of oral confessions and admissions during the period of detention before hearing significantly establishes that the purpose of the detention is illegal. The fallacy of this argument is refuted when we consider that the very essence of criminal law enforcement depends upon further investigation and interrogation of witnesses and suspects after a proper legal arrest for probable cause in the first instance. The requirement for a speedy preliminary hearing, "as soon as may be," and the urgent necessity for law enforcement to pursue its investigation of the crime and to interrogate the witnesses are not alternatives of which the state must make a critical choice. The performance of both of these functions is consistent with the constitutional rights of a defendant,

and the vital and urgent necessity of the exercise of the state's powers and duties in the detention, apprehension, and conviction of criminals.

The defendant's last contention is that his constitutional rights were violated because of failure to furnish counsel during the period of interrogation before the preliminary hearing on Monday, August 6, 1962. A preliminary hearing is not a trial within the meaning of Article I, section 11, of our Constitution, and there is no requirement that counsel be furnished an accused up to this time. Roberts v. State, 145 Neb. 658, 17 N. W. 2d 666; Latimer v. State, 55 Neb. 609, 76 N. W. 207, 70 Am. S. R. 403; Van Buren v. State, 65 Neb. 223, 91 N. W. 201; Adams v. State, 138 Neb. 613, 294 N. W. 396.

Counsel for defendant urges a departure from the doctrine set out in the Roberts case, *supra*, and cites several United States Supreme Court decisions. None of the cases cited hold that counsel must be furnished during this period of time. On the contrary, in Crooker v. California, 357 U. S. 433, 78 S. Ct. 1287, 2 L. Ed. 2d 1448, and Cicenia v. La Gay, 357 U. S. 504, 78 S. Ct. 1297, 2 L. Ed. 2d 1523, the Supreme Court of the United States held that there was no due process violation when confessions were taken after a legal arrest even though the state police officers had obtained the confessions from persons under arrest who had previously requested but were denied the benefit of legal counsel. In the Crooker case, *supra*, at page 441, it is said: "On the other hand, where an event has occurred while the accused was without his counsel which fairly promises to adversely affect his chances, the doctrine suggested by petitioner would have a lesser but still devastating effect on enforcement of criminal law, for it would effectively preclude police questioning—*fair as well as unfair*—until the accused was afforded opportunity to call his attorney. Due process, a concept 'less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights,' Betts

v. Brady, 316 U. S. 455, 462 (1942), demands no such rule." In the Cicenia case, *supra,* with respect to this contention, the court said at page 509: "On the other hand, it can hardly be denied that adoption of petitioner's position would constrict state police activities in a manner that in many instances might impair their ability to solve difficult cases."

The force of this language as applied to defendant's argument regarding interrogation during investigation is also noted here. The contention of the defendant as to the right to counsel during the period of time before preliminary hearing in this case is without merit.

We have reviewed the record in this case. It is not contended there was error in the instructions or that the evidence, assuming the confessions and admissions of the defendant were admissible, is insufficient to support the verdict. No challenge is made to the sentence imposed. We find no prejudicial error in the trial of this case. The judgment and sentence of the trial court should be and are hereby affirmed.

AFFIRMED.