STATE OF NEBRASKA, APPELLEE, v. EDGAR L. NANCE, ALSO KNOWN AS EDGAR LEE NANCE, JR., APPELLANT.

246 N. W. 2d 868

Filed November 24, 1976. No. 40558.

Frank B. Morrison and Joseph F. Bataillon, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

In count I of a seven count information, the defendant, Edgar L. Nance, was charged with the robbery of Daniel Short on May 28, 1975, under section 28-414, R. R. S. 1943. Count II charged the defendant with the use of a firearm in the commission of that robbery under section 28-1011.21, R. R. S. 1943. Counts III and IV charged the defendant with the robbery of Mary West on May 29, 1975, and with the use of a firearm in the commission of that robbery. Counts V and VI charged the defendant with the robbery of Frank Gundersen on June 5, 1975, and with the use of a firearm in the commission of that robbery. Count VII charged the defendant with being a habitual criminal under section 29-2221, R. R. S. 1943. The defendant moved to sever the counts relating to each individual robbery pursuant to section 29-2002(4), R. R. S. 1943. The trial court partially granted his motion, severing the charges relating to the Gundersen robbery, but consolidating for trial the charges relating to the Short and West robberies.

After a jury trial on October 20, 1975, the defendant was found guilty of the robbery of Gundersen, but was found innocent of the charge of using a firearm in the commission of that robbery. The defendant was also found guilty of the robberies of West and Short after a jury trial commencing November 3, 1975. The trial court had dismissed the charge of using a firearm in the commission of the Short robbery after the close of the State's case; and the jury found the defendant not guilty of the charge of using a firearm in the commis-

sion of the West robbery. Upon defendant's motion, the trial court dismissed Count VII of the information, which charged the defendant with being a habitual criminal.

The defendant was sentenced to 4 years imprisonment for the Gundersen robbery, and 5 to 7 years each for the West and Short robberies. The sentences on the West and Short robberies were ordered to be served concurrently, but consecutive to the sentence on the Gundersen robbery. The defendant now appeals his convictions to this court. We affirm.

In support of his appeal, defendant makes two assignments of error which he contends were prejudicial and require reversal of his convictions in the trial court. They are that the District Court committed reversible error (1) in allowing evidence of a one-man show-up to be presented to the jury; and (2) in partially overruling a defense motion for severance of the offenses. The first assignment of error relates only to testimony at the Gundersen trial, and in no way challenges the identification procedures related to the West/Short trial. The second assignment relates only to the issue of whether charges relating to the West and Short robberies should have been severed for separate trials. We discuss each of these assignments in the order presented.

The evidence in the Gundersen case shows that on June 5, 1975, an individual came to the Merker Realty Company, where Frank Gundersen was employed, and expressed interest in purchasing a home. The individual was at the realty office approximately 5 minutes, during which time he was viewed by Gundersen and two other employees, Cathy Bluvas and Mary Sortino. Gundersen then drove the prospective client to 3602 Blondo Street in Omaha for the purpose of showing him a house. The drive from the realty office, which is located at 2314 L Street in Omaha, took approximately 15 minutes. During the drive the prospective client at

one point waved at a police officer who was in a cruiser next to the Gundersen car when it was stopped at a traffic light.

Upon reaching the house on Blondo Street, Gundersen spent approximately 15 minutes showing the prospective client the house. The individual then struck Gundersen on the side of the head, kicked him, and placed him in a closet. The assailant removed some credit cards from Gundersen's billfold, and then left in his car. The police were notified. Gundersen described the assailant as a negro male in his mid-20's, approximately 6 feet tall, weighing 170 to 180 pounds, wearing a green short sleeved shirt with colored design flowers and two medalions.

The defendant was apprehended the next day when the police were investigating the West robbery, and was found in possession of the credit cards belonging to Gundersen. He was then taken to the police station for the purpose of standing in line-ups conducted for witnesses of all the robberies involved in this appeal. On the morning of June 6, 1975, the defendant stood in two line-ups, where he was viewed by witnesses in the Short and West cases. The defendant thereafter refused to stand in any further line-ups. He testified that the reason for his refusal was that he had not been provided an attorney. Upon his refusal, a show-up, which is a procedure where the defendant alone is presented to witnesses for the purpose of identification, was conducted for the witnesses in the Gundersen case.

Gundersen positively identified the defendant as his assailant in this show-up procedure. Cathy Bluvas was unable to positively identify the defendant, but stated that his chin, eyes, and nose resembled those of the individual she had seen in the realty office on June 5, 1975. Mary Sortino could also not positively identify the defendant at the show-up, but did state that the medalions that the defendant was wearing were like

those worn by the individual who was in the realty office the day before. She did state that she "believed" the man in the show-up was the individual who came to the realty office on June 5, 1975.

A suppression hearing was held prior to the Gundersen trial to determine whether testimony of the pretrial identification procedure should. be excluded from evidence. The trial court overruled defendant's motion to suppress, arid Gundersen was permitted to testify at the trial that he had identified the defendant in the show-up procedure. He also made an independent identification of the defendant in the courtroom during the trial. Cathy Bluvas testified at the trial, but made no identification of the defendant, and stated that she had been unable to make a positive identification at the show-up. Mary Sortino testified that she had not positively identified the defendant at the show-up, but stated at the trial, as she had at the show-up, that the defendant appeared to be the man who had come to the realty office on June 5, 1975.

The other testimony at the trial showed that the defendant had made a statement to the police after his arrest, admitting his guilt of the Gundersen robbery. The defendant also told a police officer where he had left the Gundersen automobile, which was subsequently recovered in the place where the defendant said he had left it. Another police officer testified that she had searched the defendant's apartment with his consent and had found a green shirt with flowered print like that described by witnesses as the shirt worn by the robber on June 5, 1975. A third police officer testified that it was the defendant who had waved to him from the Gundersen automobile on June 5, 1975, and that he had identified the defendant during a line-up procedure on June 6, 1975. Medalions found in the defendant's possession, like those described by the witnesses as being

worn by the robber, were offered and received into evidence.

The ground on which the defendant challenges his conviction of the Gundersen robbery is that evidence of the show-up identification procedure should not have been presented to the jury. This court has recently reviewed the validity of pretrial identification procedures in State v. Sanchell, 191 Neb. 505, 216 N. W. 2d 504 (1974), on reargument, 192 Neb. 380, 220 N. W. 2d 562, cert. den., 420 U. S. 909 (1975); and State v. Banks, 195 Neb. 340, 237 N. W. 2d 875 (1976). In those cases we applied the legal principles set forth in Neil v. Biggers, 409 U. S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). In that case the court stated that the critical issue was whether the show-up procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law, and set forth factors to be considered. Such a determination must be made on the totality of the circumstances of the case. The court concluded that it "is the likelihood of misidentification which violates a defendant's right to due process," and stated that "the admission of evidence of a showup without more does not violate due process." 409 U. S. at 198.

We cannot say that the show-up procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. The critical identification made in this case was that by Mr. Gundersen, for he was the only witness who made a positive identification at both the show-up and the trial. Neither witness Bluvas nor Sortino made a positive identification at the show-up or the trial, and therefore their testimony could not be said to have resulted in misidentification. We also note that Mr. Gundersen had ample opportunity to view his assailant. He was with the criminal, at close proximity, for more than 30 minutes. He specifically testified that

he closely observed the face of the individual who robbed him, stating: "I just watched his face, like I do any other customer, to see what reaction they have about buying a home." Gundersen gave a generally accurate description of the robber to the police prior to the show-up, including reference to a green shirt and medalions of the type that were later found in the possession of the defendant. Gundersen was unequivocal in his identification of the defendant at both the show-up and the trial, and demonstrated a high level of certainty. Finally, the show-up was held 1 day after the crime took place. These facts indicate, on the totality of the circumstances, that there was no substantial likelihood of misidentification in this case. Further facts substantiate this conclusion. The defendant's own statement to the police indicated that he had committed the crime, and his statement of the events that occurred was substantially the same as Gundersen's. The defendant's statement led the police to the discovery of Gundersen's automobile, which was found in the place where the defendant had said he had left it. The police officer at whom the defendant had waved from Gundersen's car identified him in a line-up, not merely a show-up. Finally, Gundersen's credit cards were found in defendant's possession.

It should also be noted that the pretrial identification procedures in this case were conducted before the filing of the information, and therefore the defendant was not entitled to assistance of counsel at either a line-up or show-up. Kirby v. Illinois, 406 U. S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).

The purpose of a rule barring evidence of unduly suggestive confrontations is to deter the police from using a less reliable procedure when a more reliable one may be available. Neil v. Biggers, *supra.* In this case, the purpose of the rule would not be fulfilled by excluding the evidence, for the police were prevented

from conducting a more reliable identification procedure due to the defendant's own recalcitrance. While we do not commend the use of show-ups, which have been widely criticized, as a normal means of pretrial identification procedure, under the totality of the circumstances of this case there was no violation of due process. See Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967).

Gundersen made an in-court identification of the defendant at the trial. Even if the show-up procedure could be considered as unnecessarily suggestive in this case, which we do not concede, the rule is well-established that an in-court identification may properly be received in evidence if it is independent of, and untainted by, the illegal pretrial identification procedure. See, Coleman v. Alabama, 399 U. S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); Moss v. Wolff, 505 F. 2d 811 (8th Cir., 1974); State v. Sanchell, *supra;* State v. Banks, *supra.* It would appear from the facts discussed above that Gundersen did have an independent basis to make his in-court identification, which further supports the conclusion that there was no constitutional error present in this case. We find the defendant's first assignment of error to be without merit.

Defendant's remaining assignment of error is that the District Court erred in overruling his motion for severance of the charges relating to the West and Short robberies. Section 29-2002, R. R. S. 1943, provides in part: "(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, *are of the same or similar character* or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Emphasis supplied.) Subsection (4) of section 29-2002 provides that if it appears that a defendant

would be prejudiced by a joinder of offenses, the trial court may order an election for separate trials of counts in the information.

The basis for joinder in this case was that the West and Short robberies were of the same or similar character. The evidence in the Short case showed that the defendant had entered Short's automobile repair shop on May 28, 1975, at approximately 6:30 p.m. The defendant stated that he wanted to get a car repaired, and was in the shop about 15 minutes. Other customers who were in the shop then left, and the defendant then took Short's billfold at gunpoint. The defendant then made Short get into the trunk of a car, and made his escape. Short subsequently identified the defendant as the robber in a line-up held on June 6, 1975.

The evidence in the West case showed that the defendant came to Bettcher Industries on the following day, May 29, 1975, at approximately 1 p.m. At that time Mrs. West was the only person in the office, and the defendant asked her whether any jobs were available. After a brief discussion, the defendant threatened Mrs. West with what appeared to be a gun, and forced her to lie down on the rest room floor. After binding Mrs. West, he removed her engagement ring. When she eventually freed herself, she discovered that her money and credit cards, as well as her employer's car, were missing. Mrs. West identified the defendant as the robber in a line-up held on June 6, 1975. She subsequently went to a preliminary hearing held in the case, and at that time saw her engagement ring on the hand of the defendant's girl friend, Sadie Harbour. Ms. Harbour testified that the defendant had given her the ring.

We are of the opinion that the two robberies referred to were "of the same or similar character" under the Nebraska statute referred to above, notwithstanding the fact that the offenses were committed against two different individuals, and with approximately 19 hours

intervening between the commission of the offenses. A similar situation was presented to the Supreme Court of New Jersey in the case of State v. Baker, 49 N. J. 103, 228 A. 2d 339 (1967). The New Jersey court rule on joinder, like the Nebraska statute, permits joinder of offenses of the "same or similar character." In that case, the defendant was charged with the sale of heroin in two indictments. Each indictment charged a single sale, one to a federal agent on January 10, 1963; and one to a Newark officer on March 4, 1963, almost 2 months later. The court held that the two offenses were of the "same or similar character," under its rules, and a joint trial of the separate indictments for the offenses was authorized. The court observed that the factual situations in the cases were uncomplicated, and the evidence to each offense was simple and distinct.

The facts show that the two robberies in the instant case were generally of the same or similar character. This court had a similar situation before it in State v. Rodgers, 186 Neb. 633, 185 N. W. 2d 448 (1971). In that case a defendant was charged in a two count information with the robbery of two different service stations on the same day. The trial court overruled the defendant's motion to sever the counts for separate trials. The defendant on appeal contended that the failure to sever resulted in cumulative evidence being submitted to the same jury. We stated: "Defendant maintains that the combining of the two offenses for trial was prejudicial due to weakness in the evidence on Count I. As pointed out, the record fails to sustain this contention. The question of election between counts and the advisability of joint or separate trials is one directed to the sound discretion of the trial court." The court, following prior cases, held that unless some prejudice has resulted from the failure to sever, no abuse of discretion will be found. The rule announced in the Rodgers case was adhered to in State v. McDonnell, 192 Neb. 500, 222 N. W. 2d 583

(1974), a case involving a similar factual situation.

It is clear, under our procedure, that severance is not a matter of right, and a ruling of the trial court with regard thereto will not be disturbed on appeal in the absence of a showing of prejudice to the defendant. See, generally, State v. Foster, 183 Neb. 247, 159 N. W. 2d 561 (1968); State v. Shimp, 190 Neb. 137, 206 N. W. 2d 627 (1973); State v. Erving, 180 Neb. 824, 146 N. W. 2d 216 (1966).

Although defendant contends that it is inherently prejudicial to be defending on several unrelated counts at the same time because they will tend to enforce each other, he has made no actual showing of how he was, or may have been, prejudiced. In effect, the defendant here makes the same argument as did the defendant in State v. Rodgers, *supra;* but, as in Rodgers, the facts of this case do not support such an argument. The evidence on each robbery was distinct and simple. The trial court separately instructed the jury on the elements of each count, and a further instruction provided: "The material elements of each count will be considered separately by you and a separate determination made as to each Count."

We conclude that the consolidation of the counts in this case was not an abuse of discretion, and the defendant's second assignment of error is without merit.

The judgment of the trial court must be affirmed.

AFFIRMED.

McCown, J., dissenting as to joinder issues only.

Section 29-2002, R. R. S. 1943, specifically provides that if it appears a defendant would be prejudiced by a joinder of offenses, the trial court may order separate trials. In this case the two robberies which were joined were completely separate offenses. They involved different victims, different locations, different property, and different witnesses. They did not even occur on the same day.

This court has continuously held that in a trial for commission of one crime, evidence of other unconnected crimes is inadmissible. See, Morgan v. State, 56 Neb. 696, 77 N. W. 64; State v. Casados, 188 Neb. 91, 195 N. W. 2d 210. One basic reason for the rule is that evidence of another crime may be given too much weight by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged. 1 Jones on Evidence (5th Ed.), § 162, p. 290; 2 Wigmore on Evidence (3d Ed.), § 302, p. 200. Exactly the same reason exists for holding that a trial for unconnected separate crimes should be separated if requested.

The very recent case of United States v. Foutz, 540 F. 2d 733 (4th Cir., Aug. 1976), specifically holds that where two or more offenses are joined for trial solely on the theory that the offenses were of the same or similar character, it was reversible error to deny a motion for severance, under a rule permitting severance where the accused would be unduly prejudiced by joinder. The court noted that one specific source of prejudice in such a case is that the jury may conclude the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition. It is particularly interesting to note that the test of prejudice adopted by the 4th Circuit in that case is whether evidence of one crime would be admissible at a separate trial for the other.

The ABA Criminal Justice Standards Relating to Joinder and Severance, approved and adopted in 1968, are specific on this point. "2.2 Severance of offenses. (a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." As noted in the commentary, the public interest in avoiding duplicitous time-consuming trials is weighed against prejudice to

defendants. Where the offenses are completely separate as here, duplicity in trial time, if any, would ordinarily be minimal. As a practical matter, trial time may actually be saved in many cases. By trying one case first, the proceedings may be shortened, and a second trial may be eliminated. In this case, for example, the sentence on each count was the same, to run concurrently. On the other hand, if the defendant should be found not guilty on one count, the other counts may be prosecuted or dismissed as circumstances warrant.

It seems to me better judicial policy to grant a defendant's motion for separate trials when the only connection between two counts is that they are both robberies or both burglaries. The possibility of prejudice is obvious and the constitutional guaranty of a fair trial should not have to rest on a technical interpretation of a joinder statute. Neither should the effectiveness of the constitutional right to a fair trial be dependent upon an exercise of judicial discretion in granting or denying a motion for separate trial in a case like this.