STATE OF NEBRASKA, APPELLEE, V. ROBERT W. LADEHOFF, APPELLANT.

424 N.W.2d 361

Filed June 17, 1988.   No. 87-294.

William G. Line of Kerrigan, Line & Martin, for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and MULLEN, D.J., and COLWELL, D.J., Retired.

MULLEN, D.J.

As the result of a bench trial in the district court for Butler County, defendant-appellant, Robert W. Ladehoff, was convicted of count I of the information, theft by deception, in violation of Neb. Rev. Stat. § 28-512 (Reissue 1985). The district court found Ladehoff not guilty of count II of the two-count information due to a lack of sufficient evidence. The district court sentenced Ladehoff to probation for a period of 5 years, which included, among other conditions, payment of restitution in the amount of $17,012.84 and a jail sentence of 90 days to be served at the conclusion of probation.

Five errors are assigned, which can be summarized as follows: (1) The court erred in failing to sustain defendant's motions for judgment of acquittal at the close of the State's case, at the close of the defendant's case, and at the close of all the evidence; (2) the court erred in finding the defendant guilty beyond a reasonable doubt, as such judgment was not supported by the evidence and was contrary to law; and (3) the court erred in rendering a finding of guilty on count I of the information, which was inconsistent with its finding of not guilty on count II of the information, the adduced evidence being identical except for dates and the amount of money involved.

We affirm.

In August 1985, Robert Ladehoff was in the business of buying and selling grain in Linwood, Butler County, Nebraska, under the name of Ladehoff Grain Company. He ran the grain elevator in Linwood from 1978 until 1985, but he had been in

the grain elevator business since approximately 1972.

Some farmers with whom Ladehoff dealt participated in a government feed grain program which would entitle the farmers to loans on some of their grain that they raised and stored. The loans were made through the Commodity Credit Corporation (CCC), which was a part of the U.S. Department of Agriculture. The loans were administered at the local level by the Agricultural Stabilization and Conservation Service (ASCS). Grain became the collateral for the CCC loan, which resulted in the CCC's having a lien interest in the grain. When a farmer wanted to sell the grain, he would need to receive authorization from the ASCS office. As in this case, the buyer would usually be the operator of a grain elevator who, after a deal had been struck, would pay the local ASCS the CCC's lien interest, pay the farmer any amounts in excess of the lien, and then attempt to sell the grain to another in an amount sufficient to pay his costs and make a profit. This process buttressed the allegations of both counts brought against the defendant, Ladehoff, which are recited in substantial part as follows:

### Count One

that ROBERT W. LADEHOFF, on or about August 09, August 12, August 13, August 14, and August 15, 1985, in Butler County, Nebraska, did then and there obtain property of JAMES KEELER and ELLERY RENNER by deception, to-wit: by creating or reinforcing a false impression that said ROBERT W. LADEHOFF would pay the commodity credit corporation the amount of $17,012.84 to release the commodity credit corporation's lien on corn owned by JAMES KEELER and ELLERY RENNER, and did thereby obtain corn of a value in excess of one thousand dollars the property of another.

### Count Two

that ROBERT W. LADEHOFF, on or about August 03 and August 04, 1985, in Butler County, Nebraska, did then and there obtain property of JAMES KEELER and ELLERY RENNER by deception, to-wit: by creating or reinforcing a false impression that said ROBERT W. LADEHOFF would pay the commodity credit corporation the amount of $9,655.12 to release the

commodity credit corporation's lien on corn owned by JAMES KEELER and ELLERY RENNER, and did thereby obtain corn of a value in excess of one thousand dollars the property of another.

The defendant sold corn to certain buyers in July and August 1985, and was paid for it by August 19, receiving payment on each delivery within 7 to 10 days afterward.

One of the alleged victims in counts I and II, James Keeler, contracted to sell grain to Ladehoff in early July 1985. Keeler's grain was encumbered by a lien to the CCC. The defendant was made aware of the lien, the standard practice of paying the lienholder and then the seller was agreed upon, and, in fact, both the CCC and Keeler were paid. Keeler testified that on subsequent sales the same procedure was ostensibly followed by the defendant, including his receiving the settlement sheet issued by the defendant which indicated that the CCC had been paid. Regarding the transactions in question, Keeler was paid the amount due him after Ladehoff deducted the amount owed the CCC, but the CCC in fact was not paid. In the autumn of the year the defendant filed for a chapter 7 bankruptcy, and the nonpayments came to light.

The defendant concurs with the substance of Keeler's testimony, but denies that he ever intended not to pay the CCC, asserting that his "cash flow problems" impeded timely payment. Ladehoff never disclosed to Keeler that he had not paid the CCC, as indicated in the settlement sheets. The checks to the CCC were prepared but never sent. Ladehoff's checking accounts corroborated his testimony of cash-flow problems during the summer of 1985; however, substantial sums of money were available to him during this time period if he had desired to pay this obligation rather than others.

The crime of theft by deception is found at § 28-512, and as it relates to this case states: "A person commits theft if he obtains property of another by deception. A person deceives if he intentionally: (1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind . . . ." *State v. Sailors*, 217 Neb. 693, 352 N.W.2d 860 (1984), upheld the constitutionality of § 28-512(1). *Sailors* was also a case of theft by deception involving the buying and

selling of grain. In that case we said: "It is the required element of guilty knowledge, criminal intent, which distinguishes a civil breach of contract from theft by deception—a person's knowingly creating a false impression in order to obtain another's property." *Id.* at 699-700, 352 N.W.2d at 864.

The intent of the defendant may be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his or her conduct. *State v. Robb*, 224 Neb. 14, 395 N.W.2d 534 (1986).

The State offered evidence that showed the defendant had prior dealings with other parties under similar circumstances and failed to pay their CCC liens. This evidence was received into evidence without objection to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Neb. Rev. Stat. § 27-404(2) (Reissue 1985).

The defendant asserts that because count II of the information was dismissed, his conviction on count I of the information resulted in the trial court's rendering inconsistent verdicts.

The defendant distinguishes the two counts by diminishing the differences as to the dates of the transactions and the defendant's knowledge of his worsening financial condition.

The transactions alleged in count II occurred 5 days before those in count I began. By that time the finder of fact could conclude beyond a reasonable doubt that although the defendant may not have had the requisite criminal intent to commit the crime charged on the dates contained in count II, he would have had the knowledge of his weakened financial condition occasioned by those transactions alleged in count II. From that knowledge of the unpaid liens the trial court could infer the requisite criminal intent to commit the crime alleged in count I.

In a multicount information involving factual variations, such as different times, dates, places, property, or victims, the finding on one count will not ordinarily be held inconsistent with that on any other count. *State v. Fletcher,* 221 Neb. 562, 378 N.W.2d 859 (1985); *State v. Eagle Deer,* 205 Neb. 249, 286 N.W.2d 770 (1980).

[I]n determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.

*State v. Eichelberger*, 227 Neb. 545, 549, 418 N.W.2d 580, 584 (1988); *State v. Patman*, 227 Neb. 206, 416 N.W.2d 582 (1987); *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987).

The trial court had sufficient evidence beyond a reasonable doubt to find that the defendant had the requisite criminal intent to commit the crime charged. The uncontroverted evidence showed that the defendant obtained the grain from the farmer and sold it to a willing buyer, whereupon he paid the farmer his share of the proceeds but intentionally chose not to pay the money due the farmer's lienholder. The settlement sheet was falsely prepared by the defendant to show the proper payments, and checks were prepared for the lienholder but were never sent.

The factual findings of a judge who serves as the trier of fact in a criminal case will not be disturbed on appeal unless clearly wrong. *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986).

The assignments of error are without merit. Accordingly, the judgment and sentence of the trial court are affirmed.

AFFIRMED.