STATE OF NEBRASKA, APPELLEE, V. KENNETH R. ANDERSON, APPELLANT.

427 N.W.2d 764

Filed August 5, 1988.   No. 87-826.

John H. Sohl for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl

Schroeder for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Butler County. The defendant, Kenneth R. Anderson, was charged by information with three felonies: count I, aiding and abetting the manufacturing of a controlled substance (marijuana) in violation of Neb. Rev. Stat. §§ 28-206 (Reissue 1985) and 28-416(1)(a) (Cum. Supp. 1986); count II, aiding and abetting the crime of possession of marijuana with the intent to manufacture, distribute, deliver, or dispense a controlled substance (marijuana) in violation of §§ 28-206 and 28-416(1)(a); and count III, conspiring to manufacture, distribute, deliver, or dispense a controlled substance (marijuana) in violation of Neb. Rev. Stat. §§ 28-202 (Reissue 1985) and 28-416(1)(a). The defendant's wife, codefendant Letha K. Anderson, was charged by separate information with the same offenses, and the cases against the defendant and his wife were consolidated for trial to a jury. Mrs. Anderson's case is disposed of in the succeeding case, *State v. Anderson, post* p. 436, 427 N.W.2d 770 (1988). During the course of the trial, the charges contained in count II were dismissed against both defendants. The jury found the defendant guilty of aiding and abetting the manufacturing of a controlled substance and guilty of conspiring to manufacture, distribute, deliver, or dispense a controlled substance. On the aiding and abetting charge, the defendant was sentenced to incarceration for a term of not less than 6 nor more than 20 years. On the conspiracy charge, the defendant was sentenced to a term of incarceration of not less than 6 nor more than 20 years, with the sentences to be served concurrently. Defendant appeals, contending that the district court erred in (1) overruling defendant's attorney's motion to withdraw; (2) overruling defendant's motions for a directed verdict; and (3) not holding that the State failed to establish the defendant's guilt beyond a reasonable doubt. We affirm.

The record shows the following. In September 1986, members of the Nebraska State Patrol were conducting

surveillance of a trailer home and an abandoned two-story farmhouse located near David City, Nebraska, after receiving information that a possible marijuana harvesting operation was taking place at that location. At the time the surveillance was conducted, the premises were occupied by Michael and Joanie Huber. With the aid of binoculars, officers observed the activity at the Huber residence from a cornfield located approximately 150 to 200 yards south of the trailer home. The farmhouse was located approximately 50 feet north of the trailer.

At trial, Trooper Thomas Hayes testified that on September 9, he observed Joanie and Michael Huber and their child drive away from the trailer home. Approximately 5 minutes later, Trooper Hayes observed Joanie Huber driving back to the trailer home without Michael. During the course of the day, Trooper Hayes testified that he observed Joanie Huber carrying several brown trash bags from the trailer home to the farmhouse. Trooper Hayes testified that later that afternoon, he observed Kenneth and Letha Anderson and a third individual named Norman Patton drive up to the Huber residence in the defendant's car. The Andersons had recently moved from Indiana to Nebraska. Letha Anderson testified they were visiting the Hubers in order to pick up keys to a house the Andersons were planning to rent from Joanie Huber's father, Olan Collins. At the time of their arrest, the Andersons were renting a home 3 miles south of Bruno, Nebraska. Norman Patton was a friend of the Andersons'. The defendant and Patton went into the farmhouse while the defendant's wife went into the trailer home. Trooper Hayes testified that after approximately 5 to 10 minutes the three got back into the car and drove away.

Trooper Hayes testified that on September 10, he observed the Hubers carrying bags from the farmhouse to the trailer home. The officers were able to see a stem protruding from the top of one of the bags. The Hubers then weighed the bags in a scale hanging from the open doorway. At approximately 4:30 that afternoon, the Andersons and Patton were again observed driving up to the Huber residence. Letha Anderson went into the trailer home, and the defendant, Patton, and Michael

Huber went into the farmhouse. When the defendant emerged from the farmhouse approximately 10 minutes later he was observed carrying a 4-foot plant which appeared to be a marijuana plant. Trooper Hayes testified that the defendant placed the plant in his car. The Andersons and Patton then drove away.

On September 11, the Andersons again drove up to the Huber residence. The defendant pulled a yellowish-tan plastic bag from the trunk of his car and carried it into the farmhouse. As they were leaving the Huber residence, the Andersons were arrested.

Pursuant to search warrants, officers seized two pairs of green-stained gloves which they discovered in the defendant's car. The stained substance was later analyzed and determined to be marijuana. At the trailer home, the officers found a 50-pound scale. Inside the closet in the living room, they found a pair of gloves. In one of the bedrooms, officers found several bags of wet or freshly picked marijuana. In the master bedroom, officers found four trash compactor bags, which had been taped shut, "full of some type of substance."

When the officers searched the farmhouse, they were confronted with "heavy smoke and a pungent odor of drying marijuana, suspected marijuana." In the farmhouse, officers found a space heater, which was running at the time the officers entered the farmhouse. The heater was protruding inside a homemade drying rack containing suspected dried marijuana. Officers also found the yellowish-tan plastic sack which the defendant had carried into the farmhouse. Inside the sack, officers found a new box of garbage bags and several trash compactor bags.

In the upstairs portion of the farmhouse, officers found gloves stained with a green substance and a trash compactor run by an extension cord powered from the trailer home. Inside the compactor, officers found suspected marijuana in a partially filled bag and in another bag apparently waiting to go into the trash compactor. The officers also found several trash compactor bags and a large pile of dried marijuana which had been swept into a corner of the farmhouse.

A total of 13 bags of suspected marijuana was confiscated

during the search of the trailer home and farmhouse. The contents of the 13 bags was later analyzed and determined to be marijuana.

Later that day, officers confiscated the stained blue jeans worn by the defendant following his arrest. The stained substance was analyzed and determined to be marijuana.

On September 12, officers searched the defendant's home, near Bruno, where they found an electrically operated forced air kerosene heater on the back porch. In the kitchen, officers found five boxes of garbage bags. These bags were the same brand of bags which defendant had carried into the farmhouse the day before. In the kitchen, officers found three pairs of gloves. In the defendant's bedroom, officers found four pairs of gloves, two rolls of masking tape, a 50-pound scale, and a bundle of trash compactor bags. On the defendant's bed, officers found a marijuana seed.

In his first assignment of error, the defendant argues that the district court erred in overruling defendant's attorney's motion to withdraw and that as a result, he was denied his constitutional right to effective assistance of counsel.

The record shows that on September 15, 1986, an attorney was appointed by the Butler County Court to represent both of the Andersons. On October 7, 1986, the Andersons and Patton were arraigned. At the arraignment, the attorney for the Andersons stated that he had no objection to combining the three cases for trial. The charges against Patton were dropped prior to trial.

On April 23, 1987, the Andersons' attorney, on behalf of Mrs. Anderson, filed a motion for a separate trial. On June 10, 1987, the attorney filed separate motions to withdraw on behalf of both defendants, asserting that "since the Joint Arraignment of Kenneth and Letha Anderson held on or about October 7, 1986, Letha Anderson's Motion for Separate Trial has been sustained" and that "counsel is informed that Letha Anderson has filed for a dissolution of her marriage to Kenneth Anderson. Further, that Letha Anderson has informed counsel that she will not appear to testify on behalf of Kenneth Anderson unless subpoenaed by the Court." The motions to withdraw were overruled on June 12, 1987. At trial, on June 23,

defendant's attorney explained that as a result of a telephonic conference regarding Mrs. Anderson's motion for a separate trial, he was under the mistaken understanding that the motion for a separate trial had been sustained. The record reflects, however, that no formal order sustaining her motion had been entered by the court. On June 23, on the motion for a separate trial, the court ordered as follows:

> Well, the Court finds that there is a unity of defendants, time, dates and charges and at least preliminarily finds that there would be no prejudice to either defendant being tried together. Should that become apparent for any reason during the trial, the Court may order the trials severed at that point in time, but at this point the Court finds that the motion for separate trials should be and is overruled and the matter will proceed then to the jury.

With regard to defendant's claim that he was denied effective assistance of counsel by the trial court's failure to permit his trial counsel to withdraw, we first note that multiple representation does not give rise to a denial of the defendant's sixth amendment right to effective assistance of counsel unless an actual conflict of interest exists and that conflict affects the performance of counsel. *State v. Wilson*, 224 Neb. 721, 400 N.W.2d 869 (1987); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). There is a presumption of prejudice involving a defendant's right to effective assistance of counsel when a defendant demonstrates (1) counsel actively represented conflicting interests and (2) an actual conflict adversely affected performance by the defendant's lawyer. Such conflicts of interest must be shown to have resulted in counsel's conduct detrimental to the defense. *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986). As we stated in *State v. Pope*, 213 Neb. 645, 648, 330 N.W.2d 747, 749 (1983), " 'Acquiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of the constitutional guarantees of effective assistance of counsel. . . . It is necessary that the appellant show the conflict of interest actually existed.' "

In our review of the record, we find no actual conflict of interest proven by the defendant and, thus, no prejudice caused

by the joint representation. The record does not reflect that the codefendant wife was subpoenaed to testify on behalf of the defendant nor that she testified involuntarily. Defendant did not testify. Had the defendant testified at trial that he knew nothing of the Hubers' marijuana harvesting operations, as hypothesized in defendant's brief, that position would not have been in conflict with the testimony of his codefendant wife. At trial, Letha Anderson testified that neither she nor her husband knew anything about or participated in any marijuana harvesting operation. Defendant's first assignment of error is without merit.

In his second and third assignments of error, defendant claims that the district court erred in overruling defendant's motions for a directed verdict made at the end of the State's case and at the close of all the evidence and that the State failed to prove the defendant's guilt beyond a reasonable doubt.

We first note that in a criminal trial, the trial court will be justified in directing a verdict of not guilty only where (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character and lacking in probative value that a conviction based thereon cannot be sustained. *State v. Methe*, 228 Neb. 468, 422 N.W.2d 803 (1988); *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988). In determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Ladehoff*, 228 Neb. 812, 424 N.W.2d 361 (1988); *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988). Furthermore, circumstantial evidence is sufficient to support a conviction if such evidence and the reasonable inferences that may be drawn from the evidence establish the defendant's guilt beyond a reasonable doubt. *State v. Reed*, 228 Neb. 645, 423 N.W.2d 777 (1988); *State v. Zellner*, 228 Neb. 272, 422 N.W.2d 96 (1988).

In regard to defendant's second assignment of error, there

was sufficient evidence to sustain the trial court's refusal to grant defendant's motions for a directed verdict. Defendant's second assignment of error is without merit.

Defendant was found guilty of aiding and abetting the crime of manufacturing a controlled substance, pursuant to §§ 28-206 and 28-416(1)(a), as charged in count I of the information. Section 28-206 provides as follows: "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." Section 28-416(1) provides in part as follows: "Except as authorized by this article, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance."

As stated in *State v. Schreck*, 224 Neb. 650, 651, 399 N.W.2d 830, 831-32 (1987):

"Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient."

The evidence is undisputed that the Huber farmhouse was being used in a marijuana harvesting operation. There was testimony that the defendant was observed transporting bags to the Huber farmhouse which were similar to the bags containing marijuana found at the farmhouse. A large quantity of the same type of bags was later found at the defendant's home. There was testimony that the defendant was observed coming in and out of the farmhouse where the marijuana harvesting operations were taking place, and on one occasion, the defendant was observed placing a marijuana plant from the farmhouse into his car. In the defendant's car, on the day of his arrest, officers found two pairs of gloves stained with a green substance. These gloves were similar to the type found at the Huber trailer house. The substance on the gloves was evaluated and determined to be marijuana. Furthermore, on the day he was arrested, the defendant was wearing jeans stained with a

green substance which was later determined to be marijuana. There was sufficient evidence upon which the defendant could be found guilty of aiding and abetting the manufacture of a controlled substance.

In regard to count III of the information, the defendant was found guilty of conspiring to manufacture, distribute, deliver, or dispense a controlled substance in violation of §§ 28-202 and 28-416(1)(a). Section 28-202 provides in part as follows:

A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:

(a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and

(b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

Circumstantial evidence may be sufficient to establish the existence of a conspiracy or the criminal intent necessary for the conspiracy. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. McSwain*, 194 Neb. 31, 229 N.W.2d 562 (1975). In regard to the overt act requirement of § 28-202, we stated in *State v. Lafler*, 225 Neb. 362, 374, 405 N.W.2d 576, 584 (1987), as follows:

"[A]n overt act, as something done pursuant to a conspiracy, tends to show a preexisting conspiracy and manifests an intent or design toward accomplishment of a crime. . . . An overt act, by itself, need not have the capacity to accomplish the conspiratorial objective and does not have to be a criminal act."

See, also, *State v. Copple, supra.*

In his brief, defendant contends that the State offered no evidence that the defendant acted with the requisite intent to commit the crime, as set out in § 28-202. We have held that intent may be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his or her conduct. *State v. Ladehoff*, 228 Neb. 812, 424 N.W.2d 361 (1988); *State v. Pence*, 227 Neb. 201, 416 N.W.2d 581 (1987).

The facts of the present case, as set out above, presented sufficient evidence upon which the jury could find that the

defendant intentionally conspired with the Hubers to manufacture, distribute, deliver, or dispense a controlled substance. Defendant's third assignment of error is without merit.

The judgment of the district court is affirmed.

AFFIRMED.