STATE OF NEBRASKA, APPELLEE, V. ROCHELLE SWIFT, APPELLANT.

431 N.W.2d 643

Filed November 18, 1988.    No. 88-008.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and Vanessa R. Jones for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Rochelle Swift appeals her felony jury convictions for manslaughter and the use of a knife to stab to death her estranged former live-in boyfriend, Eugene Vermont Williams. Swift's sole assignment of error claims her convictions were based upon insufficient evidence. We affirm.

On the manslaughter charge, the defendant was sentenced to not less than 4 nor more than 6 years' imprisonment, and a consecutive sentence of not less than 1 nor more than 3 years' imprisonment for using the knife in the killing.

Under Neb. Rev. Stat. § 28-305 (Reissue 1985), manslaughter is a Class III felony. A Class III felony is punishable by not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985). Using a knife in the commission of a felony under Neb. Rev. Stat. § 28-1205 (Reissue 1985) is also a Class III felony, and the sentence must run consecutively to the underlying felony. Since Swift does not assign error in regard to the sentences, we shall not discuss them further.

In determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Anderson*, 229 Neb. 427, 427 N.W.2d 764 (1988); *State v. Ladehoff*, 228 Neb. 812, 424 N.W.2d 361 (1988); *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988).

The State elected to prosecute the defendant under that portion of § 28-305 which states in substance as follows: "A person commits manslaughter if he kills another without malice ...upon a sudden quarrel...."

The prosecution's evidence reflects that Swift and Williams, her former live-in boyfriend and father of her child, within 6 to 7 minutes engaged in three sudden quarrels during the early morning hours of June 17, 1987. The three arguments and stabbing took place in the area of North 23d Plaza and Charles Street in Omaha. A State's eyewitness testified that the first argument was over the couple's baby. Swift told police the first argument resulted from Williams' insistence that she engage in prostitution. At trial, Swift said Williams accused her of not going to see their baby. The next two arguments occurred when Williams was attempting to leave the scene and the defendant twice kicked the car in which the victim was riding. From the evidence, it is clear that had the defendant not provoked Williams and, as one State's witness testified, "[C]alled him out," the victim would have left the scene and no one would have been injured. A jury could find from the evidence that after the first and second quarrels Swift had an opportunity to retreat from the scene. From the testimony of a prosecution witness, a jury could also find that during the third quarrel, Swift, up until the time she stabbed Williams in the chest, also had an opportunity to retreat from the scene. It was during the third quarrel that Williams was fatally stabbed.

Swift was already in the area where the quarrels and stabbing took place. Williams had been driving his current girlfriend's car near downtown Omaha when he picked up Milton Felder, a

longtime friend, whom he permitted to drive the car. Felder began driving toward his home located near where the fatal stabbing occurred. Williams was in the front passenger seat. Felder testified that when they approached where Swift was located, Swift called out to Williams, the car was stopped, and Williams got out and talked to Swift. The defendant testified that Williams called to her. Conversation between the couple degenerated into an argument and name calling by both parties. Felder convinced Williams to leave, and the victim got back into the car. At this point, Swift kicked the car door. Felder testified that Williams again left the vehicle, and more words and name calling were exchanged between the defendant and victim. Williams reentered the vehicle to leave the area. Swift again kicked the car as it was slowly leaving the scene. Williams left the vehicle while it was still moving. The quarrel between the defendant and victim again became heated.

It was undisputed that soon after the third time Williams left the vehicle in which he was riding, Swift pulled an already opened switchblade knife from her purse. Swift began swinging the knife at the unarmed Williams. Williams was stabbed on his right forearm. Williams wrapped his sweatshirt around his forearm, then used the wrapped arm to bat at Swift's knife in an apparent attempt to knock the knife from her hand. Williams had not been wearing the sweatshirt, but had it tied by its arms around his neck. The pathologist who performed the autopsy described the forearm wound as being consistent with Williams' acting defensively.

From Felder's testimony, the jury could find beyond a reasonable doubt that as Swift was swinging her knife, Williams backed across the street from where the quarrel started and that Swift, still swinging the knife, continued to charge Williams. Swift also stabbed Williams in the left chest, perforating his pulmonary artery and puncturing the upper lobe of his left lung, which caused internal bleeding. After receiving the chest stab wound, Williams kicked at the knife and threatened to kill Swift.

Felder rushed the wounded man to the hospital. Williams died as a result of the stab wound in the chest.

Much of the State's evidence was corroborated by Swift's

own testimony and her version given to the police after she hid for some 14 hours after the stabbing. At trial, the defendant claimed that Williams threatened to kick her and that she stabbed him in self-defense. Swift claimed Williams slapped her during the third quarrel.

Swift testified that she had previously been beaten and choked by Williams and that he had threatened to kill her. Swift stated that she began carrying the knife because she was afraid of Williams. Swift had never contacted the police or required medical treatment because of the injuries she claimed were inflicted by Williams. She testified she was not drunk, but "high" from alcohol at the time of the stabbing.

Swift's self-defense claim is controlled by Neb. Rev. Stat. § 28-1409 (Reissue 1985), which provides:

> (1) . . . the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> . . . .
>
> (4) The use of deadly force shall not be justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily harm . . . nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

The jury was properly instructed and obviously found the State had proven beyond a reasonable doubt the elements of the crimes charged. It is also obvious that the jury found that Swift's actions were not justified under § 28-1409. The evidence was sufficient to convict Swift of the two crimes charged.

AFFIRMED.