STATE OF NEBRASKA, APPELLEE, V. DAVID E. ILLIG, APPELLANT.

467 N.W.2d 375

Filed March 22, 1991.    No. 89-1273.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C. J.

David E. Illig, the defendant, appeals jury convictions of second degree murder, use of a firearm to commit a felony, and felon in possession of a firearm. We affirm.

During the early morning hours of January 24, 1989, the victim, Chris Smith, knocked loudly on the door of the residence of the defendant and his girl friend, Diane Antillon. Antillon went to the door, asked who was there, and related to the defendant that Smith was at the door. The defendant asked her for a gun and, thereafter, by his own devices, obtained a .38-caliber handgun which belonged to him.

The testimony indicates that the defendant opened the door and that the victim demanded a $100 payment, which he claimed was due and owing because of some earlier business transaction between the two men. Antillon tried to dissuade the victim from pressing his demands, and she somehow became situated between the defendant and the victim. During the confrontation at the door, the defendant asserts, he saw the victim thrust forward a knife and that defendant then fired one round from his handgun. He then "shut [his] eyes" and fired again.

The victim died as a result of the gunshot wounds. Defendant's girl friend and a neighbor called the 911 emergency number. Police officers arrived at the scene and made the customary investigation.

Officer Carlson of the Omaha Police Division was the first law enforcement officer to arrive on the scene. As he arrived, the defendant emerged from a group of trees near his residence. Carlson ordered the defendant to halt and then asked, "What happened?" The defendant replied, "He tried to kick my door in." Carlson asked where the victim was. Illig pointed toward the victim lying on the driveway. Carlson then asked, "Who shot him?" The defendant responded, "I did." Carlson had the defendant walk backward, did a visual check for weapons, and then had him lie face down on the driveway, following which Carlson's backup, Officer Zadalis, arrived and handcuffed Illig.

Officer Carlson then proceeded to the residence of the defendant. He testified that the screen door was shut, but that

the wooden front door to the house was open.

He said that he walked up to the screen door and Antillon opened the door. He asked her where the gun was. She pointed to the gun on the coffee table. Carlson entered the residence and secured the area around the weapon, leaving the weapon itself untouched. He could see that the weapon was unloaded because it was partially "broke" open.

Officer Briese, an officer of the homicide-assault unit of the Omaha Police Division, relieved Carlson and investigated the scene. Briese testified over objection as to observing in plain sight various weapons and spent and unfired cartridges, as well as the .38-caliber handgun which fired the fatal shots, all of which evidence he seized.

The trial court correctly instructed the jury as to second degree murder and manslaughter, and also as to the claimed defense of self-defense and as to the fact of restoration of civil rights of the defendant after having successfully completed a term of probation for the underlying conviction of a felony. Nevertheless, defendant appeals, assigning as error the action of the trial court in (1) overruling defendant's motion to suppress evidence seized in violation of his rights under the 4th and 14th amendments to the U.S. Constitution and article I, §§ 1 and 7, of the Nebraska Constitution (improper search and seizure as to the weapons and cartridges), (2) failing to quash and/or to dismiss the count as to felon in possession of a firearm (because of his successful completion of his probation and restoration of his civil rights by reason thereof), (3) failing to sever the count as to felon in possession of a firearm from second degree murder and use of a weapon to commit a felony, and (4) failing to dismiss the counts as to second degree murder and use of a firearm to commit a felony or, in the alternative, to direct a verdict of acquittal because there was insufficient evidence to support the verdict or to rebut the defendant's evidence of self-defense or defense of others.

The defendant argues that evidence was seized in violation of his rights under the 4th and 14th amendments to the U.S. Constitution and article I, §§ 1 and 7, of the Nebraska Constitution. The defendant moved to suppress this evidence, but the motion was denied. Defendant's objections to

admission of this evidence at trial were overruled.

The Supreme Court will uphold the trial court's ruling on a motion to suppress unless the trial court's findings of fact are clearly erroneous. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* 484 U.S. 863, 108 S. Ct. 180, 98 L. Ed. 2d 133; *State v. Walker*, 236 Neb. 503, 461 N.W.2d 755 (1990); *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990); *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989). In making this determination, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed the witnesses testifying in regard to such motions. *Vrtiska, supra*; *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990); *Porter, supra*; *Sardeson, supra*.

Defendant's motion to suppress covered all evidence seized from the defendant in which the defendant claimed that he had a reasonable expectation of privacy. This included the murder weapon, several other guns, cartridges, spent shell casings, and various pictures taken of the interior of defendant's residence.

The fourth amendment to the U.S. Constitution protects against unreasonable searches and seizures by the government. The Nebraska Constitution contains a similar provision. See Neb. Const. art. I, § 7.

The U.S. Supreme Court has stated that "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment —subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Accord *Thompson v. Louisiana*, 469 U.S. 17, 105 S. Ct. 409, 83 L. Ed. 2d 246 (1984).

The Supreme Court unanimously rejected a "murder scene exception" to the warrant clause in *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). The Supreme Court held that such an exception was inconsistent with the 4th and 14th amendments. It should be pointed out that in *Mincey* and *Thompson*, a general search of the residences took place. In *Mincey*, this included the opening of cupboard doors and

envelopes, the searching of pockets in clothing, and the pulling up of carpeting.

In the above-cited cases, the Supreme Court noted that the police may make warrantless entries on the premises where the police "reasonably believe that a person within is in need of immediate aid." *Mincey, supra* at 437 U.S. at 392. The Court further noted that the police may also make "a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Id.* Cf. *Michigan v. Tyler*, 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). This exception is known as the "emergency doctrine," an exigent circumstance which authorizes a warrantless or nonconsensual entry into a suspect's home. *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981). See, also, *State v. George*, 210 Neb. 786, 317 N.W.2d 76 (1982).

In *Resler*, this court cited a definition of the emergency doctrine which states the following:

"Law enforcement officers may enter private premises without either an arrest or a search warrant to preserve life or property, to render first aid and assistance, or to conduct a general inquiry into an unsolved crime, provided they have reasonable grounds to believe that there is an urgent need for such assistance and protective action, or to promptly launch a criminal investigation involving a substantial threat of imminent danger to either life, health, or property, and provided further, that they do not enter with an accompanying intent to either arrest or search. If, while on the premises, they inadvertently discover incriminating evidence in plain view, or as a result of some activity on their part that bears a material relevance to the initial purpose for their entry, they may lawfully seize it without a warrant. Thus, to qualify as an emergency exception, there must reasonably appear to exist an exigency in the course of which a discovery related to the purpose of the entry is made. The exigent circumstances legitimate the presence, and the relevance of the discovery to the justification for the entry sanctions the seizure." See Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth*

*Amendment*, 22 Buffalo L. Rev. 419, 426-27 (1973). *Resler, supra* at 254, 306 N.W.2d at 922.

The Court in *Mincey* stated: " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey, supra* at 437 U.S. at 392 (quoting *Wayne v. United States*, 318 F.2d 205 (1963), *cert. denied* 375 U.S. 860, 84 S. Ct. 125, 11 L. Ed. 2d 86). Furthermore, the Court concluded that any evidence that is in plain view may be seized by the police during the course of their legitimate emergency activities. *Mincey, supra*. See, also, *Tyler, supra*; *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). A warrantless search must be strictly confined by the exigencies which justify its initiation. *Mincey, supra*; *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

An officer may seize evidence and contraband without a warrant if it is discovered inadvertently while it is in plain view and the officer has a right to be in the place where he has such a view. *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983), *cert. denied* 466 U.S. 906, 104 S. Ct. 1684, 80 L. Ed. 2d 158 (1984); *State v. Holman*, 221 Neb. 730, 380 N.W.2d 304 (1986); *Resler, supra*. The seizure of evidence in plain view does not constitute a search. *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990).

The court in *Resler, supra*, set out three guidelines for the application of the emergency doctrine.

"The basic elements of the exception may be summarized in the following manner: (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

"The first requisite is that the police have valid reasons for the belief that an emergency exists, a belief which must be grounded in empirical facts rather than subjective feelings . . . .

"The second requirement is related to the first in that the protection of human life or property in imminent danger must be the motivation for the search rather than the desire to apprehend a suspect or gather evidence for use in a criminal proceeding. . . .

"Finally, the limited privilege afforded to law enforcement officials by the emergency exception does not give them carte blanche to rummage for evidence if they believe a crime has been committed. There must be a direct relationship between the area to be searched and the emergency."

*State v. Resler*, 209 Neb. 249, 255-56, 306 N.W.2d 918, 923 (1981), quoting from *People v. Mitchell*, 39 N.Y.2d 173, 347 N.E.2d 607, 383 N.Y.S.2d 246 (1976), *cert. denied* 426 U.S. 953, 96 S. Ct. 3178, 49 L. Ed. 2d 1191. Accord *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990).

The guidelines set forth in *Resler* are applicable. Officer Carlson's entry into the house was justified because of the life-threatening emergency present. The gun used to shoot the victim had not yet been located. Carlson's entry into the house to secure the gun was necessary to protect life and avoid serious injury. Until the gun was secure, the lives of all who responded to the emergency were in danger. Furthermore, at that time Carlson did not know if there were any other suspects or victims. Thus, Carlson was justified in believing that an emergency existed in which he had an obligation to enter the home, secure the gun, and determine if anyone else was injured.

The second requirement is also satisfied. Carlson did not enter the home to search the home or arrest the suspect. Carlson did not search the house or arrest Antillon. Carlson escorted Antillon out of the house and then secured the weapon. He did not search any other rooms in the house. He made no effort to determine whether any evidence was present elsewhere in the home. The only property he seized was in plain view in the living room.

Finally, Carlson had a reasonable basis, approximating probable cause, to associate the emergency with the place to be searched. The shooting took place on the porch of the defendant's home. When the first shot was fired, the defendant

was standing in his home. After he shot the victim, the defendant returned to the living room, and Antillon removed the gun from his hands and placed the gun on the coffee table in the living room. It was reasonable for Carlson to assume that the gun, another suspect, or another victim was located in the house.

Based on the guidelines, Carlson clearly did not enter the house to make an unreasonable search or to arrest a suspect. Carlson entered the house to protect the lives of all those responding to the emergency and to determine if there were any other victims. Carlson's actions fall completely within the emergency exception to the fourth amendment prohibition against warrantless, nonconsensual searches.

Carlson's entry into the house was proper based on the emergency exception. In responding to the emergency situation, Carlson could seize all the items in plain view. This included all the photographs of the living room and all the items taken from the living room which were in plain view. Therefore, the gun, the spent cartridges, and all the photographs taken in the living room were properly admitted.

The defendant argues that since Carlson did not physically seize the gun or any of the other items in plain view in the living room, the seizure of such evidence is improper. It is clear from the record that the items were seized by Carlson. Carlson would not have permitted the removal of the gun by anyone other than police personnel. Nor would Carlson have allowed the removal of the spent cartridges. All the items in the living room in plain view were seized upon Carlson's entry into the house.

The photographs taken of guns in various other parts of the home were not in plain view from the living room. There is no testimony from Carlson that he did a preliminary search or sweep of the entire house to determine if there were any other suspects or victims. At the time Carlson seized the gun in the living room, the weapon used in the shooting was believed to have been seized, the victim had been located, and the suspect apprehended. The photographs of the other guns were taken after all this had transpired, and thus the emergency situation no longer existed. The other rooms in the house had not yet been searched. Thus, any search of and seizure from the

remainder of the house constituted an illegal search and seizure of those items taken.

The items obtained in the illegal search and seizure were photographs of guns located throughout the house. These photographs should not have been admitted.

An erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990); *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). Error is harmless where the conduct of the trial court did not materially influence the jury in a verdict adverse to the substantial rights of the defendant. *Plant, supra*; *Cox, supra*. Erroneous admission of evidence is harmless error and does not require reversal if the erroneously admitted evidence is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the findings of the trier of fact. *Plant, supra*; *Cox, supra*.

Antillon testified without objection that there were four guns on the premises, that three of the guns were hers, and that the other gun was the defendant's. Also, the defendant testified that he owned a gun and that Antillon had several guns. Any photographs of the guns would be cumulative to the testimony; therefore, there was no prejudice in admitting the pictures of the guns.

The trial court was correct in refusing to suppress photographs of the living room and the items taken from the living room which were in plain view. The failure to suppress the photographs taken of the guns located throughout the house is harmless error beyond a reasonable doubt. Grounds for reversal do not exist when the admission of evidence is harmless and no prejudice has been demonstrated. *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985).

Next, defendant assigns as error the failure of the trial court to quash and/or dismiss count III of the amended information. Count III of the amended information charges Illig with possession of a firearm by a felon, which is a violation of Neb. Rev. Stat. § 28-1206(1) (Reissue 1989). Section 28-1206 provides in part:

(1) Any person who possesses any firearm with a barrel

less than eighteen inches in length . . . and who has previously been convicted of a felony or who is a fugitive from justice commits the offense of possession of firearms by a felon or a fugitive from justice.

On July 14, 1989, the defendant moved to quash, or dismiss, count III or, in the alternative, to sever count III from counts I and II. The motion to dismiss, or quash, was based on the fact that the defendant had his civil rights restored by operation of Neb. Rev. Stat. § 29-2264 (Reissue 1989). The motion to sever was based upon unfair prejudice to the defendant because of the evidence relating to his prior felony conviction. The motions were denied.

Defendant asserts that pursuant to § 29-2264, a person who satisfactorily completes probation has his conviction nullified and civil rights restored the same as though a pardon had been issued. The record includes both the felony conviction and the order for expunction. The defendant argues that the conviction under § 28-1206 is erroneous, since he is not a convicted felon. Defendant does not cite to any cases which support his proposition.

Section 29-2264(5) provides several instances where the setting aside of the conviction does not prevent the use of that conviction in a later proceeding. The statute provides that the setting aside of the conviction shall not:

(a) Require the reinstatement of any office, employment, or position which was previously held and lost or forfeited as a result of the conviction;

(b) Preclude proof of a plea of guilty whenever such plea is relevant to the determination of an issue involving the rights or liabilities of someone other than the offender;

(c) Preclude proof of the conviction as evidence of the commission of a crime, whenever the fact of its commission is relevant for the purposes of impeaching the offender as a witness, except that the order setting aside the conviction may be introduced in evidence;

(d) Preclude use of the conviction for the purpose of determining sentence on any subsequent conviction of a criminal offense;

(e) Preclude the proof of the conviction as evidence of

the commission of a crime in the event an offender is charged with a subsequent offense and the penalty provided by law is increased if the prior conviction is proved; or

(f) Preclude the proof of the conviction to determine whether an offender is eligible to have a subsequent conviction set aside . . . .

§ 29-2264(5).

Notably absent from this list is the use of the conviction to prove a substantive element of the crime. In this instance, the substantive element was that defendant was a felon, as proved by the conviction.

Some states that have dealt with this issue have a specific statute which prohibits the possession of firearms by felons, even where their civil rights have been restored. See, e.g., *People v. Bell*, 49 Cal. 3d 502, 778 P.2d 129, 262 Cal. Rptr. 1 (1989) (stating that felons cannot possess a firearm, even after receiving a certification of rehabilitation); *State v. Jones*, 539 So. 2d 866 (La. App. 1989) (concluding that despite the fact that the defendant's conviction had been set aside after probation was concluded, the conviction could be considered for the purposes of the felon in possession charge; the court noted that although the law did provide that the setting aside of the conviction had the same effect as an acquittal in other respects, the conviction could be considered a first offense for any law relating to a cumulative offense).

Other states which do not have specific statutes have held that the restoration of civil rights does not include the right for a felon to possess a firearm. See, e.g., *State v. Hall*, 301 N.W.2d 729 (Iowa 1981) (concluding that statute prohibiting felons from possessing firearms was applicable to the defendant despite the fact that the defendant had received a full restoration of citizenship rights before enactment of the law prohibiting felons from possessing firearms; the court noted that an express authorization to possess firearms in the restoration of citizenship would have permitted the defendant to carry a firearm); *State v. Thomas*, 35 Wash. App. 161, 665 P.2d 914 (1983) (holding that it was proper to use a prior conviction to prove a felon in possession charge despite the fact

that all penalties and disabilities resulting from imposition of judgment and sentence had been removed, defendant's probation terminated, and his civil rights restored).

This court has not dealt with this issue directly; however, the U.S. Court of Appeals for the Eighth Circuit has applied the Nebraska expunction law to a federal firearm possession charge. In *United States v. Germaine*, 720 F.2d 998 (8th Cir. 1983), the court concluded that the Nebraska law which provided for expunction of a felony does not nullify the conviction for the purposes of 18 U.S.C. § 922(h) (1982), which makes it unlawful for a person previously convicted of a crime punishable by imprisonment for more than 1 year to receive firearms shipped in interstate commerce. See *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S. Ct. 986, 74 L. Ed. 2d 845 (1983). The court of appeals stated:

> "[E]xpunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty. Expunction * * * means no more than that the State has provided a means for the trial court not to accord a conviction certain continuing effects under state law. Clearly, firearms disabilities may be attached constitutionally to an expunged conviction * * *."

*Germaine, supra* at 999 (quoting from *Dickerson, supra*).

Although the felon in possession violation in *Germaine* arises through a federal law, the same rationale can be applied to state law. Thus, the firearm disability could be attached to the expunged conviction, and the conviction could be used to prove a violation of § 28-1206.

In addition, the State cites Neb. Rev. Stat. § 83-1,130(2) (Reissue 1987), which states:

> The Board of Pardons may, in appropriate cases where a person has been convicted of a felony, and has heretofore been granted a pardon by the appropriate authority of this state, or is hereafter granted a pardon for a conviction occurring prior or subsequent to August 25, 1969, empower the Governor to expressly authorize such person to receive, possess, or transport in commerce a firearm.

The State argues that this statute clearly shows the legislative

intent that the right to possess firearms by a felon is not automatically obtained with a pardon but, rather, is specifically reserved for the Governor's express authorization. The State alleges the defendant has no such authorization, and thus the conviction should stand.

At first glance, it appears that a restoration of civil rights should result in the restoration of the right to bear arms. However, upon viewing case law, it appears that this is usually not the case. There was no error by the trial court in not dismissing count III.

As his third assignment of error, Illig argues that the joinder of count III with counts I and II was improper and thereby prejudiced Illig's right to a fair trial under the 14th amendment. As previously noted, the motion to sever count III from counts I and II was denied.

The authority to join offenses may be found in Neb. Rev. Stat. § 29-2002 (Reissue 1989), which provides:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

. . . .

(3) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offense, and the defendants, if there are more than one, could have been joined in a single indictment, information or complaint. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

(4) If it appears that a defendant or the state would be prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of

defendants, or provide whatever other relief justice requires.

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987); *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990); *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989). Joinder is not prejudicial error where evidence relating to both offenses would be admissible in a trial of either offense separately. *Porter, supra*; *Thompson, supra*; *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984). The right to a separate trial is statutory and depends upon a showing that prejudice will result from a joint trial. The defendant bears the burden of proving that prejudice will result from a joint trial. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

In determining if the offenses are properly joinable, first this court must determine how the offenses are related. The offense in count III occurred at the same time as the offenses in counts I and II. Thus, the offenses which were joined are all part of the same act or transaction and are properly joinable under § 29-2002(1).

Second, this court must determine if the joinder of the offenses would be prejudicial to the State or to the defendant. The defendant bears the burden of proving that prejudice will result from a joinder of offenses. This burden has not been met.

Defendant alleges that the joinder of the offenses prejudiced him because evidence of his previous felony conviction would be admitted. Defendant further argues that the evidence of the felony conviction is inadmissible and unnecessarily and improperly prejudicial, thereby precluding his right to a fair trial.

Defendant continues by quoting extensively from Judge McCown's dissent in *State v. Nance*, 197 Neb. 95, 246 N.W.2d 868 (1976). The dissent states that evidence of unconnected other crimes is inadmissible because too much weight is given to this evidence, which could result in the conviction of a defendant because he is a bad man, rather than because he is guilty. See, *State v. Casados*, 188 Neb. 91, 195 N.W.2d 210 (1972) (finding that it was prejudicial error to join offenses

because crimes were independent); 1 S. Gard, Jones on Evidence § 4:18 (6th ed. 1972); 2 J. Wigmore, Evidence in Trials at Common Law § 302 (J. Chadbourn rev. 1979).

Defendant's argument is without merit. First, the facts in the *Nance* case are distinguishable from those in the case at bar. In *Nance*, the "unconnected" crimes Judge McCown referred to were two different robberies or burglaries which did not arise from a single act or event. Evidence of another crime was introduced to show the identity of the defendant. In the case at bar, the crimes are connected. The crimes occurred at the same time and arose from a single act or event, namely, the shooting of Smith. The potential witnesses, the crime scene, and the weapon were involved in all three crimes. These crimes were not unconnected.

Second, there was no undue prejudice from the joinder of the offenses. Evidence relating to all offenses would have been admissible in a trial of each offense separately, because the elements of the crimes were interwoven. Evidence of the felony could have been introduced to impeach the defendant's testimony, as provided by Neb. Rev. Stat. § 27-609 (Reissue 1989), which states the following:

> (1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.
>
> . . . .
>
> (3) Evidence of a conviction is not admissible under this rule if the conviction has been the subject of a pardon, annulment, or other equivalent procedure which was based on innocence.

Furthermore, despite the expunction of the felony charge, authority is given in § 29-2264(5)(c) to use the felony to impeach the offender as a witness. Therefore, evidence of the conviction of that felony would have been admitted even if the counts had been severed. In *State v. Thompson*, 231 Neb. 771, 438 N.W.2d

131 (1989), this court held that joinder was not prejudicial error where evidence relating to both offenses would have been admissible in a trial of either offense separately. The *Thompson* court followed the reasoning in *State v. Walker*, 200 Neb. 273, 263 N.W.2d 454 (1978), and *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984), and held that evidence of either robbery would have been admissible at a separate trial of the other robbery to establish identity and a method of operation. Therefore, since the defendant was not prejudiced by the consolidation, the trial court did not abuse its discretion in ordering the two informations consolidated for trial.

In the case at bar, the defendant was not prejudiced by the joinder of the counts. This assignment of error is without merit.

In the final assignment of error, the defendant alleges that the evidence was insufficient to support the verdicts or to rebut the evidence of self-defense or defense of others. In determining the sufficiency of the evidence to support a criminal conviction, this court does not resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence presented. *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *State v. Thomas*, 236 Neb. 568, 462 N.W.2d 618 (1990); *State v. Peterson*, 236 Neb. 450, 462 N.W.2d 423 (1990); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990). On a claim of insufficiency of the evidence, this court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. *Fellman, supra.* A verdict rendered thereon must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Clark*, 236 Neb. 475, 461 N.W.2d 576 (1990); *Peterson, supra.* Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by the evidence beyond a reasonable doubt. *Peterson, supra; State v. Meis*, 217 Neb. 770, 351 N.W.2d 79 (1984).

"A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Neb. Rev. Stat. § 28-304(1) (Reissue 1989). " 'The essential elements in the crime of murder in the second degree are that the

killing be done purposely and maliciously.' " *State v. Rowe*, 214 Neb. 685, 689, 335 N.W.2d 309, 312 (1983), quoting from *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979). The court in *Rowe* continued its discussion of malice and intent, stating: "We also said in *State v. Clermont* [citation omitted]: 'The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse . . . .' " *Rowe, supra* at 689-90, 335 N.W.2d at 313. See, also, *State v. Johnson*, 200 Neb. 760, 266 N.W.2d 193 (1978); *State v. Hardin*, 212 Neb. 774, 326 N.W.2d 38 (1982).

Furthermore, this court has stated that malice and intent may be inferred from the words and acts of the defendant, from the facts and circumstances surrounding his or her conduct, and from the evidence relating to the circumstances of the criminal act. See, *State v. Anderson*, 229 Neb. 427, 427 N.W.2d 764 (1988); *State v. Ladehoff*, 228 Neb. 812, 424 N.W.2d 361 (1988); *State v. Pence*, 227 Neb. 201, 416 N.W.2d 581 (1987); *Rowe, supra*; *Clermont, supra*.

In *State v. Partee*, 199 Neb. 305, 258 N.W.2d 634 (1977), the court held that the evidence negated the theory that the victim's death was accidental. The court further found that a jury could infer that the perpetrator acted with malice and intent to kill, since his wife was so brutally beaten.

In *Rowe, supra*, the jury concluded that Rowe acted intentionally and with malice. The victim in *Rowe* had been struck on the head with a blunt object. She was then mutilated. The blow to the head was not the cause of death; rather, the cause was the loss of blood from the incisions that the defendant made to the body. The defendant had maintained that the head injury was caused by a fall. The defendant presented evidence to establish that he had made the incisions to the body; however, he argued that he was not guilty by reason of insanity. The jury chose not to believe Rowe's witnesses. The Nebraska Supreme Court stated that based on the circumstantial evidence, the jury could have concluded that the defendant intended to make the incisions which caused his wife's death. See *Rowe, supra*.

*Partee* and *Rowe* illustrate that the injury to the victim may be used to prove malice and intent. In the case at hand, the malice or intent to kill could be inferred from the injuries inflicted upon the victim and the manner in which those injuries were inflicted.

The evidence was sufficient to support the verdicts and further to reject the defendant's claim of self-defense or defense of others. First, the defendant was safe in his home with the door locked when the victim arrived. Rather than call the police or ignore the victim, the defendant, with a gun in his hand, chose to unlock the door and confront the victim. Once the defendant came out of the house with the gun, he also became an aggressor. Second, the defendant never retreated back into his home, even after he saw the knife in the victim's hand. There was no evidence presented that safe retreat was not possible for the defendant and Antillon. Third, Antillon never saw the victim with a knife. Fourth, the defendant fired five shots at the victim, four of which hit the victim. Fifth, two of the four gunshots hit the victim from behind. The defendant continued to shoot at the victim as the victim was retreating. Finally, the gunshots were not fired in rapid succession. There was a pause between the third and fourth gunshots. Based upon this evidence, the jury determined that the defendant was guilty of second degree murder.

The trial court is justified in directing a verdict of not guilty only where the evidence completely fails to establish an essential element of the crime charged, or evidence is so doubtful in character and lacking probative value that a conviction based thereon cannot be sustained. *State v. Anderson, supra*; *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988).

The evidence was sufficient to support the verdicts and to rebut the evidence presented by the defendant of self-defense or defense of others. This assignment of error is without merit.

The judgment of the district court is affirmed.

AFFIRMED.