IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SPENCER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

GORDON L. SPENCER, SR., APPELLEE.

Filed January 6, 2026.    No. A-25-277.

Appeal from the District Court for Hamilton County: RACHEL A. DAUGHERTY, Judge. Reversed and remanded for further proceedings.

Douglas D. Dexter, Hamilton County Attorney, for appellant.

John A. Sauder, of DeWald Deaver L'Heureux, P.C., L.L.O., for appellee.

BISHOP, Judge.

### INTRODUCTION

Gordon L. Spencer, Sr., was charged with 20 criminal counts following the execution of a search warrant of his property that resulted in the discovery of various controlled substances, firearms, and other deadly weapons. Spencer filed a motion to suppress and exclude all evidence obtained as a result of that search warrant. He claimed the search warrant was issued in reliance upon false information contained in the warrant affidavit and that any evidence obtained from the search should be suppressed. The Hamilton County District Court entered an order sustaining Spencer's motion.

The State of Nebraska filed an interlocutory appeal to a single judge of this court pursuant to Neb. Rev. Stat. § 29-824 (Reissue 2016), which allows the State to appeal from an order granting a motion to suppress evidence. The State asserts that the district court erred in granting Spencer's motion. I agree with the State that law enforcement did not act intentionally or with reckless disregard for the truth when applying for a search warrant. The district court's order sustaining Spencer's motion to suppress is reversed and the cause is remanded for further proceedings.

- 1 -

BACKGROUND

On April 12, 2024, Deputy Thomas Ruvalcaba, employed by the Hamilton County sheriff's office, went to Spencer's home in Aurora, Nebraska, to serve him with civil process. According to Deputy Ruvalcaba's incident report, he saw Spencer exiting a semi-truck for "'Spencer Trucking'" and when he attempted to make contact with him, Spencer "chose to ignore" him and walked away into his house. While behind Spencer, the deputy observed a "black pistol in [Spencer's] back right pocket, possibly a Glock brand." A female known to the deputy was also heading into the house and she agreed to take "the paper" in with her. Spencer "called into dispatch" and complained about how the deputy "delivered the paper." He was told he could come in and make a formal complaint. Spencer dropped off "the paper" at the sheriff's office and it was reported to Deputy Ruvalcaba that Spencer was "not accepting the paper."

Due to his observation of a firearm in Spencer's possession, Deputy Ruvalcaba subsequently did a "Personal Criminal History" on Spencer "regarding the possibility of being a prohibited person." The deputy's incident report indicated that he did "not observe the history to mark him a felon," but he did see "felony charges and a guilty plea to a felony in Missouri in 2008." Deputy Ruvalcaba then spoke with the county attorney about Spencer "being a prohibited person." During the deputy's testimony at the motion to suppress hearing, he described exhibit 12 as "the Triple I," which was Spencer's criminal history, and it was that document he consulted to determine that Spencer was a convicted felon. He explained that the document "did not put the banner of felon at the very top of the Triple I which the State of Nebraska does." In his earlier deposition testimony, the deputy stated that in Nebraska "if you are a convicted felon, it will normally have like a banner on the top," meaning "a bunch of stars, asterisks," that would say "'Felon' or 'No Firearms Sale,' or something along those lines." But other states "don't necessarily have that." And, according to the deputy's testimony at the suppression hearing, the criminal history showed "two possessions of controlled substance felony with two different guilty convictions, with two different dates, that occurred in 2008." Because "every state does their Triple I's slightly different," and it was "kind of difficult to read," the deputy went to the county attorney. The county attorney confirmed the deputy's reading of the "Triple I," that "there was a positive felony conviction" for Spencer. Other than "looking at the Triple I" and "speaking to the county attorney," Deputy Ruvalcaba acknowledged that he did not do anything else to verify the convictions he was relying upon, nor did he know what the county attorney did to verify the convictions.

On April 23, 2024, Deputy Ruvalcaba filed an "Application and Affidavit for Issuance of a Search Warrant" with the county court for Hamilton County. In his affidavit, the deputy averred that while "conducting normal duty of civil paper service" on Spencer at his residence, Spencer was gathering "personal items including groceries" from a semi-truck. After informing Spencer that he was there to "serve him civil papers from the court," Spencer "ignored" the deputy and walked towards his house. The deputy observed what he "knew due to his training and experience to be a black handgun" in Spencer's "back right pocket." He saw "part of the grip which had finger grooves to be visible with a magazine inserted" and the magazine had a "buttplate release spring button on the bottom." The deputy also noticed the "pistol to be making Mr. Spencer's pants sag in the back." The deputy stated he had "conducted a personal criminal history check" on Spencer

and it "showed a felony conviction in Missouri in 2008." The deputy confirmed the conviction with the county attorney "who also observed a felony conviction." The deputy stated he was investigating crimes for possession of a deadly weapon by a prohibited person and that there was probable cause to believe there was evidence concealed or kept at Spencer's residence, semi-truck and trailer, and vehicle.

The search warrant was executed "at approximately 1933 hours" on April 28, 2024. The following items were found during the search. A "48-gun gun safe marked 'Freedom Security by Liberty,'" for which Spencer declined to provide the code for access. However, after multiple attempts, Deputy Ruvalcaba succeeded in guessing the passcode and opened the safe where he observed "multiple pistols and drug paraphernalia." Due to the presence of illegal narcotics, another search warrant was obtained. In the gun safe, there were three handguns, one shotgun, and one "AR-style rifle." "All but one pistol was loaded with a loaded magazine inserted in the firearm. One pistol and the shotgun had rounds in the chamber, ready to be fired." Some personal items belonging to Spencer were also in the safe. Among the narcotics and drug paraphernalia found in the gun safe were "four baggies containing various amounts of white crystalline substance," which the deputy knew to be methamphetamine and which field tested positive for it. The baggies "totaled 16.6 grams," which the deputy knew to be well above "the normal user amount of methamphetamine." Fentanyl was also found in the gun safe, along with a pocketknife "with a blade over 3.5 inches." A machete and a "straight blade," both more than 3.5 inches were located at the property. "Throughout the property and in the gun safe," there was "marijuana, marijuana paraphernalia, narcotic paraphernalia, multiple boxes of ammunition totaling 1,777 rounds, and multiple loaded magazines belonging to the rifle and handguns."

A complaint was filed in the county court for Hamilton County on May 3, 2024, alleging 20 different criminal counts against Spencer, as a result of the search warrant executed on April 28, 2024. The charges included possession of a controlled substance (over 10 grams) with intent to deliver while in possession of a firearm, a Class IB felony; possession of a deadly weapon (firearm) by a prohibited person, a Class ID felony (five counts); possession of a deadly weapon (firearm) during the commission of a felony, a Class II felony (five counts); possession of a deadly weapon (not a firearm) by a prohibited person, a Class III felony (three counts); possession of a deadly weapon (not a firearm) during the commission of a felony, a Class III felony (three counts); possession of a controlled substance with intent to deliver while in possession of a firearm, a Class ID felony; and possession of a controlled substance without a tax stamp, a Class IV felony (two counts). Spencer waived a preliminary hearing and the case was bound over to the district court.

On June 25, 2024, an information was filed in the district court charging the same 20 counts as set forth above. The same day, Spencer filed a "Written Plea of Not Guilty and Waiver of Arraignment." On October 29, Spencer filed a "Motion to Suppress and Request for Hearing Pursuant to *Franks v Delaware*." In his motion, Spencer sought to suppress and exclude from use against him "any and all evidence and statements obtained as a result of the execution of the April 23, 2024, search warrant obtained by law enforcement, and any evidence obtained pursuant to subsequent warrants obtained during the execution of the aforementioned search warrant." He claimed that Deputy Ruvalcaba requested a search warrant after running a criminal history check on Spencer, and that the "criminal history was obtained without probable cause or even reasonable suspicion that [Spencer] was engaged in criminal activity."

Spencer also claimed that Deputy Ruvalcaba's affidavit, submitted in support of the April 23, 2024, search warrant, "contained information that was false" and that it was "made knowingly and intelligently or with reckless disregard for the truth, to wit: the allegations in paragraphs nine (9) and ten (10) claiming that [Spencer] is a prohibited person are false." At the hearing on the motion to suppress, Deputy Ruvalcaba was questioned about a document entitled "Judgment and Order of Expungement and Order to Vacate the Sentence Marijuana-Related Offense(s)." The order from the "15th Judicial Circuit, Lafayette County, Missouri," was dated July 26, 2023; it indicated that Spencer had been "found guilty and/or convicted of a marijuana-related offense in Count(s) I & II," and then listed a felony for "Possession of Controlled Substance" and a misdemeanor for "Unlawful Use of Drug Paraphernalia." It indicated that those counts "is/are hereby vacated pursuant to the provisions in Article XIV, Section 2, of the Missouri Constitution." It further stated that Spencer's "records related to the arrest, plea, trial, sentencing and conviction for a marijuana-related offense are hereby expunged." It then ordered "each agency identified in this Judgment to expunge the arrest, plea, trial, and conviction record(s) of [Spencer]." "Any records maintained by the courts or any agency shall be maintained as sealed records." The "Certificate of Expungement" states that "the above offense(s) has been expunged and the sentence vacated, and a copy of this order has been mailed to agencies that have records related to such conviction." Deputy Ruvalcaba had never seen that document prior to his deposition in this case. And as represented by the State in this appeal, "[t]here is no dispute that the conviction Deputy Ruvalcaba observed in reviewing [Spencer's] criminal history and the conviction that was expunged are the same offense." Brief for appellant at 17.

The district court entered an order on March 28, 2025, concluding that based on the totality of the evidence presented, Spencer showed by a preponderance of the evidence that Deputy Ruvalcaba "acted with reckless disregard for the truth and included a false or misleading statement or omitted information material to a probable cause finding." It noted that the criminal history obtained by the deputy did not indicate that Spencer was a prohibited person and that the only investigation or verification conducted was to speak to the county attorney. The deputy "did not contact the State of Missouri to corroborate a conviction, and had he done so, he would have been informed that the conviction was expunged and vacated on July 26, 2023," by a Missouri court order. "In re-examining the affidavit excluding the false or misleading statement," the district court concluded that "there is not probable cause for the issuance of the initial warrant and thus the initial search and the subsequent search are both fruit of the poisonous tree." It therefore granted Spencer's motion and suppressed the evidence obtained pursuant to the warrants.

The State appeals pursuant to § 29-824.

ASSIGNMENTS OF ERROR

The State claims, reordered, that the district court erred in finding that (1) Spencer met his burden under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); (2) law enforcement officers searching Spencer's property violated his constitutional rights under *Franks v. Delaware, supra*, and its progeny; and (3) the expungement of the Missouri felony conviction rendered that conviction null for purposes of Neb. Reb. Stat. § 28-1206 (Supp. 2025) (possession of deadly weapon by prohibited person).

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021).

We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. *Id*. We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding. *Id*.

## ANALYSIS

The State contends the district court erred in finding that Spencer met his burden of proving by a preponderance of the evidence that Deputy Ruvalcaba acted with reckless disregard for the truth when applying for a search warrant under *Franks v. Delaware, supra*. Because I agree with the State on this issue, the other assigned errors need not be addressed.

The Fourth Amendment explicitly sets out the requirements of a warrant: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022). To determine whether a warrant was issued upon probable cause, a court generally limits its review to the four corners of the affidavit. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021).

In determining the validity of the search warrant at issue in this case, the district court relied upon the analysis in *State v. Short, supra*, as set forth below.

> In *Franks v. Delaware*, 438 U.S. 154, 164-65, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the U.S. Supreme Court explained, "'[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing.'" The Court clarified this "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct." Rather, it recognized probable cause may be founded upon hearsay as well as "upon information within the affiant's own knowledge that sometimes must be garnered hastily." It concluded that "surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."

> In contrast, it would be "unthinkable" to allow a warrant to stand beyond impeachment if it were revealed after the fact to contain a "deliberately or reckless false statement." Thus, while there is a presumption of validity with respect to the affidavit supporting the search warrant, that presumption may be overcome and a search warrant may be invalidated if the defendant proves the affiant officer "'knowingly and intentionally, or with reckless disregard for the truth,'" included in the affidavit false or misleading statements that were necessary, or "material," to establishing probable cause.

> Courts have extended the *Franks* rationale to omissions in warrant affidavits of material information. Omissions in an affidavit used to obtain a search warrant are

- 5 -

considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit.

If the defendant successfully proves, by a preponderance of the evidence, that the police knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement or omitted information material to a probable cause finding, then the court examines whether the evidence obtained from the warrant and search was fruit of the poisonous tree. In an "'excise and re-examine' corollary to the independent source rule," the trial court reexamines the affidavit after deleting the false or misleading statement and including the omitted information, and it determines whether, viewed under the totality of the circumstances, it still establishes probable cause. If it does not, then *Franks* requires that the search warrant be voided and the fruits of the search excluded.

Mere negligence in preparing the affidavit will not lead to suppression, as the purpose of the exclusionary rule is to deter misconduct. We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding.

*State v. Short*, 310 Neb. 81, 124-126, 964 N.W.2d 272, 307-308.

At the suppression hearing, Spencer presented evidence that the 2008 Missouri conviction was expunged and his sentence was vacated. The district court found that "[b]ased upon the totality of the evidence presented, . . . Spencer has shown by a preponderance of the evidence that Ruvalcaba acted with reckless disregard for the truth and included a false or misleading statement or omitted information material to a probable cause finding." It found that "[w]hile Ruvalcaba may not have been aware of the expungement, he was aware there was an issue with the 'conviction' because he knew the report should have stated that Spencer was a felon, as other reports he had seen did." The court added that "Ruvalcaba . . . went so far as to contact his county attorney, but he did not go so far as to contact the State of Missouri."

The State contends that there was no evidence that Deputy Ruvalcaba knew that Spencer's Missouri conviction had been expunged, and he "could not have knowingly or intentionally" omitted that information from the probable cause affidavit. Brief for appellant at 18. "This leaves the question of whether the omission of the expungement . . . was omitted from the warrant affidavit with reckless disregard for the truth." *Id*. The State argues that this was the "apparent basis" for the district court's decision, and that such an "interpretation of *Franks* and its progeny places too heavy a burden on law enforcement, and one that is not constitutionally required." *Id*.

The State initially assigned and argued that under Nebraska law, expungement of a felony conviction does not affect the validity of that conviction for purposes of § 28-1206 (possession of deadly weapon by prohibited person). The State cites to *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991), for the proposition that the expungement does not alter the legality of the previous conviction. The district court distinguished *Illig*, noting that it involved reviewing the setting aside of a conviction and restoration of civil liberties, whereas, in Missouri, the conviction was vacated pursuant to provisions in the Missouri Constitution.

- 6 -

However, determining the impact of the Missouri expungement is not necessary to decide this interlocutory appeal. Rather, the issue is whether Deputy Ruvalcaba's representation in his warrant affidavit about Spencer's prior felony conviction was made intentionally, in bad faith, or in reckless disregard for the truth. See *State v. Short, supra*. Mere negligence in preparing the affidavit will not lead to suppression, as the purpose of the exclusionary rule is to deter misconduct. *Id*. The district court did not find that the deputy's representation was made intentionally and in bad faith; rather, it determined that the deputy "knew the report should have stated that Spencer was a felon, as other reports he had seen did," and while the deputy "went so far as to contact his county attorney," "he did not go so far as to contact the State of Missouri." Thus, the trial court concluded that Spencer had shown by a preponderance of the evidence that the deputy "acted with reckless disregard for the truth and included a false or misleading statement or omitted information material to a probable cause finding."

The State contends there was no reckless disregard for the truth by Deputy Ruvalcaba. The deputy "reviewed a law-enforcement database, and found reference to [Spencer's] Missouri conviction." Brief for appellant at 27. "It was objectively reasonable for [the deputy] to rely on that reference in his application for a search warrant." *Id*. "There was nothing untruthful, or even misleading, in Deputy Ruvalcaba's statement in his affidavit that he had 'conducted a personal criminal history check on [Defendant and found] a felony conviction in Missouri 2008.'" *Id*. (Brackets in original.)

Spencer responds that Deputy Ruvalcaba acted with reckless disregard for the truth because he "disregarded the criminal history's correct assessment that Spencer *is not* a convicted felon and he also ignored the warnings contained in the criminal history to obtain specific information from the Missouri agency contributing the 2008 criminal information." Brief for appellee at 14 (emphasis in original). Spencer points to Deputy Ruvalcaba "instantly" recognizing that "there was an issue with Spencer's criminal history when he observed that it *did not* indicate Spencer was a felon yet had the 2008 Missouri felony on his record." *Id*. (Emphasis in original.)

However, contrary to Spencer's assertion, the 26-page "Triple I" (exhibit 12) did not make an "assessment" that Spencer was not a convicted felon; rather, Deputy Ruvalcaba did not see "a banner on the top," meaning "a bunch of stars, asterisks," that would say "'Felon' or 'No Firearms Sale,' or something along those lines," like "the State of Nebraska does." The deputy nevertheless did see a 2008 Missouri felony conviction. He also clarified that "every state does their Triple I's slightly different," thus making it "kind of difficult to read," and prompting him to seek confirmation from the county attorney.

Exhibit 12 shows that there was no criminal history for Spencer in Nebraska, but that the record would be complete upon receipt of responses from Florida, Missouri, and South Dakota. The Missouri criminal history section is prefaced with a general advisement that all entries are compiled from the information furnished to the "CENTRAL RESPOSI-TORY," and for specific data about charges or arrests, "CONTACT THE CONTRIBUTING AGENCY." The document specifically shows a disposition of "GUILTY" on two dates in 2008 for felony possession of a controlled substance. The South Dakota criminal history was also prefaced by a general advisement that "BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR FUTURE USE," and "THIS RECORD CONTAINS SOUTH DAKOTA INFORMATION ONLY." It further advises that

"WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE DIRECTLY WITH THE AGENCY THAT CONTRIBUTED THE RECORD INFORMATION." The South Dakota criminal history reflects misdemeanor drug possession charges in 2015 that were subsequently dismissed. The 15 pages of Spencer's Florida criminal history were also prefaced by a general advisement that "[t]his record contains Florida information only," and "[w]hen explanation of a charge or disposition is needed, communicate directly with the agency that contributed the record information." The document lists numerous arrests and charges dating from 1987 to 2006, many misdemeanors and some felonies, with various dispositions not relevant to this appeal.

A review of exhibit 12 does not reveal any "warnings" that should have prompted Deputy Ruvalcaba to obtain further information from the Missouri agency contributing the 2008 criminal information. Rather, the Missouri criminal history prefaced its report by stating that when an explanation of a charge or disposition "IS NEEDED," communication should be made directly with the agency that contributed the record information. In this case, the Missouri criminal history clearly indicated that Spencer had a conviction in 2008 for felony possession of a controlled substance, and after receiving confirmation of the same from the county attorney, the deputy proceeded with requesting a search warrant.

I agree with the State that Spencer failed to prove by a preponderance of the evidence that Deputy Ruvalcaba recklessly disregarded the truth when he identified the 2008 Missouri felony conviction and sought confirmation of the same with the county attorney without conducting any further investigation. Although the deputy acknowledged that the "Triple I" did not put a banner or "a bunch of stars, asterisks" at the top that would say 'Felon' or 'No Firearms Sale' like they do in Nebraska, the deputy also stated that other states "don't necessarily have that." So when he saw the 2008 convictions in Missouri, he sought confirmation from the county attorney before proceeding with requesting a search warrant. Spencer did not produce any evidence that every state's criminal history report will contain the type of "banner" described by the deputy, nor did he present any state or federal authority that would indicate such a "banner" is required.

Further, although the district court acknowledged that the deputy "went so far as to contact his county attorney," it nevertheless found that "he did not go so far as to contact the State of Missouri." I agree with the State's observation that the district court's standard would "require officers to research the court databases of other states before applying for a search warrant," and that "[s]uch a search would apparently be required anytime an officer found a conviction of interest on the database, to be sure that the conviction hadn't been expunged." Brief for appellant at 28. The State argues, "Such a search would be pointless without the legal expertise to analyze the information thus uncovered," which the "Fourth Amendment has never been construed to require this, until now." *Id*.

Because the evidence does not support a finding that Deputy Ruvalcaba's affidavit for a search warrant contained falsehoods or omissions that were made intentionally or with reckless disregard for the truth, the warrant was issued upon probable cause that Spencer had a prior felony conviction and was thus prohibited from possessing a deadly weapon pursuant to § 28-1206. The expungement of the 2008 Missouri felony conviction may impact the State's ability to convict Spencer under § 28-1206; however, the only issue relevant to deciding this interlocutory appeal is whether Spencer proved by a preponderance of the evidence that Deputy Ruvalcaba's warrant

affidavit contained falsehoods or omissions that were made intentionally or with reckless disregard for the truth. I conclude that the burden of proof was not met. Simply because more steps could have been taken to verify a felony conviction that was clearly set forth in the "Triple I" does not mean failing to do so rises to a reckless disregard for the truth under the circumstances presented in this record.

## CONCLUSION

The judgment of the district court sustaining Spencer's motion to suppress is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.